**UNITED STATES v. TWO ACRES OF LAND, MORE OR LESS, IN WILL COUNTY, ILL., et al.**

No. 8443.

Circuit Court of Appeals, Seventh Circuit.

Aug. 2, 1944.

Norman M. Littell, Vernon L. Wilkinson, Wilma C. Martin, and Norman McDonald, all of Washington, D. C., J. Albert Woll, U. S. Atty., and Clarence W. Beatty, Jr., Asst. U. S. Atty., both of Chicago, Ill., for appellant.

Irving Shutts, of Joliet, Ill., for appellees.

Before EVANS, SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The facts pertinent to the issues presented in this appeal appear in United States v. Grace Evangelical Church, 7 Cir., 132 F.2d 460. Upon retrial in pursuance of our mandate, at the court's direction, the jury returned a verdict for $7000 as just com-

208

pensation for the land taken. From the judgment upon the verdict the Government appeals.

At the trial the Government produced one witness, who testified in chief that the property was fairly worth $4750 and, on cross-examination, that the church building could be reproduced for $6800; excluding, however, anything for leaded windows, oak pews and certain other items, constituting part of the equipment for religious services. Defendant relied upon the contract referred to in our earlier opinion and a stipulation of fact.

The Government renews here, as it did in its petition for rehearing in the first appeal, the propositions relied upon in our earlier review, namely: (1) that the contract is contrary to public policy in that it amounts to a cost plus contract in violation of the statute, 50 U.S.C.A.Appendix, § 1171; and (2) that the agreed purchase price was arrived at by including improper elements, and presents the new suggestion that the United States is not bound in condemnation proceedings by the price fixed in a contract of purchase.

■ We see no occasion to recede from the announcements of our opinion in 132 F.2d 460 or to add but little to what we said there concerning validity of the contract. The statute under which the Government proceeded, Section 171, Title 50 U.S.C.A., provides that when the owner of land shall fix a price which in the opinion of the Secretary of War shall be reasonable he may purchase at such price without further delay. Acting under this authority, the War Department accepted an offer to sell, fixing the value at $7000 and wrote defendant advising it of the Government's acceptance and election to purchase and directing defendant to surrender possession within 30 days from date and to deliver, at the earliest practical date, abstracts of title to Raymond Herman who would handle details of closing and settlement. This was the same Herman whom, in paragraph 6 of the contract, it was provided the vendors would pay 5 per cent of the purchase price as compensation for procuring the sale and preparing the deeds for the conveyance of the land. It seems to us apparent that this was a contract openly and fairly entered into by the Government by its acceptance of an offer which it was not bound to accept but which, with notice of all terms and conditions, it did accept. As said in United States v. Bethlehem Steel Corporation, 315 U.S. 289, 62 S.Ct. 581, 592, 86 L.Ed. 855: "Having made a bargain, the Government should be held to it unless there are valid and appropriate reasons known to the law for relieving it from its obligations."

■■ This is not a cost plus contract. There is no evidence that any commission was added to the purchase price. In this respect the contract differs from that involved in United States v. Muschany et al., 8 Cir., 139 F.2d 661, at page 663, where, as reported by the court, the actual agreement was "that the landowner should then be allowed to add an additional five per cent as compensation for McDowell; and that the total should be inserted in the option as the gross sale-price figure." We have here at the most only proof of an agreement by defendants that they will pay Herman for attending to the procurement of the sale and the execution of the deeds out of the purchase price of $7000. There is no evidence that any commission was added to the value or to the purchase price. Obviously the War Department believed the price reasonable. Having so determined, it was authorized by the statute to execute an agreement of purchase. Therefore, when the Government later saw fit to bring condemnation proceedings, the measure of just compensation having been agreed upon by the parties, the court could only direct a verdict in accord with the figure stipulated by the parties. This, we believe, is in accord with Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 236, 84 L.Ed. 240. There the court held that when the Government condemns land, the purchase price of which it has agreed upon with the owner, that agreed price becomes the amount due for compensation for the property taken.

True, the present contract contains no provision for condemnation as in the Danforth case, but we do not understand that the Government estops itself from bringing a condemnation suit merely because it has agreed with the owner upon the amount of compensation to be paid. It is not improbable that in many instances the title is in such condition that an eminent domain proceeding against all probable or possible owners is advisable in order to acquire unimpeachable title. The court having exercised its jurisdiction to take the res, then, has the power to determine to whom the proceeds belong. So, here, the Government found a title in which there was possibility of reverter to the heirs of the original own-

ers of the land upon which the church was located. It may have thought it wise, in order to assure itself against all possible outstanding interests, to conduct a condemnation proceeding in which all such possible parties in interest would be brought into court and adequate title assured. True, eventually, an agreement was made with all such possible reverter owners. But none of these facts, it seems to us, distinguish this from the Danforth case, in which the court held the agreed price to be the proper measure of damages.

The Government insists that the District Court was without jurisdiction to entertain a cross-claim at the suit of defendants for the reason that no consent had been given for the sovereign thus to be sued. But, under the reasoning of the Danforth case, no cross-claim was necessary. The issue in a condemnation suit is what constitutes just compensation to the owner for the interest taken and, where the owner has stipulated with the Government, the agreed figure becomes the measure of damages to be assessed as just compensation for the land taken. This necessitates no cross-claim but requires merely presentation of the agreement of the parties, or, as said in the Danforth case, a "motion to determine the value at the agreed price." Such was the motion made by defendant here at the conclusion of the evidence. Had no counterclaim been filed, the same result would necessarily have followed.

The Government further contends that in agreeing upon compensation of $7000 the Government and defendant took into consideration improper elements. We think it too late, in the absence of mistake or fraud, to inquire whether the War Department and the owner, in agreeing upon the value of the land, considered this or that element. The Department was authorized, if it considered the offer reasonable, to accept it. This it did.

Furthermore there is no competent evidence in the record that any of the parties ever took into consideration or gave weight to any specific elements in arriving at $7000. The Government offered an unsworn appraisal report to substantiate its theory in this respect, but the exhibit was not competent, for it was the unsworn ex parte statement of opinion of a witness not produced for cross-examination.

We think the trial resulted properly on the merits. The sole witness for the Government testified to a replacement value of the building, exclusive of certain church fixtures such as pews and leaded windows, of $6800. In addition the plot of ground was taken. In the case of nonprofit, religious or service properties, cost of replacement is regarded as cogent evidence of value although not in itself the only standard of compensation. But people do not go about buying and selling country churches. Such buildings have no established market values. Consideration must be given to the elements actually involved and resort had to any evidence available, to prove value, such as the use made of the property and the right to enjoy it. City of Chicago v. Farwell, 286 Ill. 415, 121 N.E. 795; Producers' Wood Preserving Co. v. Commissioners of Sewerage of Louisville, 227 Ky. 159, 12 S.W.2d 292; In re Simmons, Sup., 127 N.Y.S. 940; Orgel on Valuation Under Eminent Domain at page 122. Irrespective, therefore, of any question as to the validity of the contract, from the evidence submitted by the Government, the verdict was amply justified.

The judgment is affirmed.

EVANS, Circuit Judge (dissenting).

The jury in the court below brought in the following verdict: "We, the jury, empaneled and sworn in the above-entitled cause, do find and report that the just compensation which the petitioner shall make for the property of the Grace Evangelical Church of South Providence Ridge, taken by the petitioner, is the sum of $4,750.00."

Thereupon attorney for defendant moved the court that the "verdict be rejected and the court, or the jury be instructed by the court to bring in a verdict in accordance with the contract at $7,000" to which the court replied, "I think I will have to do that." The court then directed the jury to return a verdict for $7,000 and directed the foreman to sign for all, which was done.

I think this was error.

Only one witness testified as to the value of the property. In his opinion it was worth $4750. He was cross-examined fully. The only other evidence as to the value of the property, if it be evidence, was the contract. The jury while deliberating returned to the court room and asked the court for enlightenment. The Court said:

"This gentleman that testified here testified that the property is worth $4,750.00,

and here is a contract between the church and the United States of America by R. D. Valliant, Colonel, who is authorized to sign for the Secretary of War fixing the value at seven thousand and no hundred dollars. That is in evidence.

"You may retire."

Upon this evidence and under this instruction, the verdict of $4750 was clearly justified.

Defendant, however, relies upon an option contract running to the United States, which was accepted. By stipulation it was agreed that such option agreement was given and Colonel Valliant elected to take the property at the option price.

When defendant offered its option to purchase contract, plaintiff's counsel asked leave to present his objections, which was granted. They were:

"I want to object upon the ground and for the reason, one, that a contract by the United States for the purpose of purchasing land which does not contemplate that it is to be binding, in the event condemnation proceedings are to be instituted, is not binding on the United States as to the value of the property;

"(2) That the contract is contrary to public policy because it provided that the real estate broker engaged by the War Department to negotiate for the purchase of the lands was to be paid a commission of 5 per cent of the purchase price by the land owner;

"(3) That the United States is not bound by the price fixed in the option of the contract because it included payment for items: Namely, minister's salary, $650.00; damages to the congregation of $1,000.00, for which neither the Secretary of War or any of his subordinates had authority to pay."

Counsel for plaintiff offered a certified copy of the option contract appraisal report signed by M. H. Hollingsworth, dated November 16, 1940. It was duly certified to as a part of the record of which the option relied on by defendant was a part. The following occurred:

Court: "What is that?"

Counsel for Plaintiff: "That is the certificate which I have offered in support of the third portion of the objection."

The Court: "What is this?"

Mr. Beatty: "A certified copy of the appraisal."

The Court: "Out of your file?"

Mr. Beatty: "Yes, Your Honor."

Mr. Shutts, attorney for the defendant: "If the Court please, that is a self-serving statement."

The Court: "Objection overruled."

Mr. Beatty: "Exception."

The Court: "Anything else?"

Mr. Shutts: "That is our case, Your Honor."

The Court: "Anything else?"

Mr. Beatty: "No Your Honor."

The Court: "Both sides rest."

The appraisal, omitting unimportant features, read:

| | |
|---|---|
| "Land ½ acre | $ 95.00 |
| Buildings Church Building | 5000.00 |
| Building Minister's Salary | 650.00 |
| Buildings Damages to Congregation | 1000.00 |
| Total | $6745.00 |
| Commission | 355.00" |

In other words, the sum fixed in the option agreement, according to this appraisal, included an unpaid salary to the minister of $650, $1,000 damages to the congregation, and a commission of $355 to the real estate agent who was to be paid by the vendor at the rate of 5% of the purchase price. $100 was deducted as that sum was to be paid to one who was to have the property if not used as church property.

In this case the purchase price was the option price and the option price was the appraisal, save for the explained $100.

For reasons stated in my dissenting opinion, I think the contract is void as against public policy. I will not repeat the reasons which led me to that conclusion.

Since the announcement of our previous decision, another Circuit Court of Appeals has been presented with a somewhat similar case. United States v. Muschany, 8 Cir., 139 F.2d 661. Its opinion is contrary to the majority opinion in our case. The Supreme Court has granted certiorari in the Muschany case. 321 U.S. 760, 64 S. Ct. 846.

There is another reason why I think the judgment should be reversed. As before pointed out, if a jury case were presented, the verdict of $4750 should not have been changed by the court. On the other hand,

if the land had been sold, then the condemnation suit should have been dismissed. If the condemnation superseded the other negotiations and the contract was not completed, then the issue was the fair value of the land, upon which issue the verdict of the jury was final. Any claim which defendant has against the Government for breach of contract, is enforcible in the Court of Claims.

The appraisal showed that included in the option price was a commission to the broker of $350. Also included was $650 for minister's unpaid salary. Also included was $1,000 for damages to members of the congregation. The inclusion of these items, if the evidence established their existence, affords additional reason for the rejection of the agreement and the price fixed therein. For however worthy it may be to pay the minister his salary and also to reward the loyal members of the congregation, courts can hardly charge these items to the Government. And more need not be said about the invalidity of a contract where an agent of the purchaser is paid a commission by the vendor, based on total price which he and the vendor determine.

The appraisal in this case affords an illustration of the evils where no one is interested in keeping the price down and where the vendor's and vendee's agent each has a financial interest in raising it.

It is suggested, but not by counsel, that the appraisal was not properly before the court. When it was offered in evidence, defendant did object, but for no valid reason. If it were admissible, it was because the option contract of which it was apparently a part had been offered by defendant, and received in evidence. It has, however, no particular bearing other than to concretely illustrate the dangers and evils of a contract wherein the Government is represented by one who has a financial interest in an increased price.

Defendant contends that the Government should not repudiate its contract, but on the other hand, by example, should carry out its agreements whether they be profitable or unprofitable. With this contention, no one can disagree. The Government should be the last to question its valid contracts. On the other hand, every citizen should realize that the public treasury is not a legitimate object of raid.

For property necessarily taken for war purposes, the Government should pay just and fair compensation. But just compensation for the taking of church property does not include minister's past salary, nor a sum payable to loyal church goers as a reward for their activities. The taxpayer should be solicitous of fair play, not only for himself, but for his Government. He should see that the Government is represented by one whose interest is to keep down, rather than to raise, the purchase price.

One who would include a minister's unpaid salary and a sum for damages to members of the congregation as part of the fair value of the land taken by the Government for war purposes is not in a good position to cry out that the Government should stand by its agreement.