**UNITED STATES of America,**
**Plaintiff,**

v.

**1146.32 ACRES OF LAND IN VICTORIA COUNTY, TEXAS, and Frank S. Buhler et al., Defendants.**

**No. 192.**

United States District Court
S. D. Texas, Victoria Division.

Nov. 16, 1956.

Malcolm R. Wilkey, U. S. Atty., Arthur L. Moller, and John D. Richardson, Asst. U. S. Attys., Houston, Tex., for plaintiff.

Stofer, Proctor, Houchins & Anderson (John G. Stofer), Victoria, Tex., and Vinson, Elkins, Weems & Searls (David T. Searls and Jack D. Head), Houston, Tex., for Frank S. Buhler and others, the former fee simple title holders.

Eastham & Williams (Willard C. Williams), Houston, Tex., for Leroy Johnson and others, the former rice tenants.

INGRAHAM, District Judge.

This is a suit for the condemnation of land by the Government. There have been six Declarations of Taking of six contiguous tracts of land consisting of approximately 1,471 acres, all out of the

same parent ownership. The ·dates of the respective Declarations of Taking range from September 22, 1952, to June 30, 1955. The right of the Government to take the land is not disputed by defendants and the parties have agreed that the only issue in dispute to be litigated is the right of defendants to just compensation. This issue was referred to a commission appointed under the provisions of Rule 71A(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. D. C., 132 F.Supp. 681.

The commission conducted extensive hearings at Victoria and Houston, which concluded with the filing of its report. All parties have filed exceptions to the report. It is to these exceptions that this memorandum opinion is directed.

The land in question is that taken and used by the United States Air Forces as Foster Air Force Base in Victoria County, Texas. Foster Air Force Base was originally built by the United States Army Air Corps about 1940 or 1941 upon the tract of land described in plaintiff's Declaration of Taking No. 1 recited to contain 1,144.71 acres of land, under a temporary lease from the defendant landowners. At the conclusion of World War II, the air base was abandoned, the lease terminated, and the land returned to the defendant landowners with the permanent improvements thereon. Such improvements include a residence occupied by the defendant Frank S. Buhler, two barns, an incinerator building, seven warehouses, an airplane hangar building, three swimming pools, 120,000 square yards of paved roadways, 970,700 square yards of concrete airfield runways and pavement, a storm sewer system, a sanitary sewer system, complete water distribution plant and water mains, two water wells, gas lines, fences, and 3,500 linear feet of railroad tracks. The portion of such property occupied by the warehouses, airplane hangar, and railroad tracks was being used as an industrial warehouse area at the time of the taking. That portion of the tract which had been subdivided by paved roadways was ideally suited for residential development. The remainder of the tract upon which the airfield runways and pavement were located, of course, was primarily adaptable for use as an airfield.

The case of United States v. Savannah Shipyards, Inc., 5 Cir., 139 F.2d 953, 954, is a case comparable to the case at bar in several respects. The Savannah Shipyards case was tried to a jury and our case was tried to the commission, but there is great similarity in the issues involved, the complex nature of the property and improvements, as well as the character of the evidence presented, with respect to cost of reproduction and related matter. The following is quoted from the Savannah Shipyards case:

"Due to the fact that there were no recent and comparable sales of shipyards in course of construction, testimony was received for the purpose of showing cost of reproduction and cost of production as an aid to the jury in arriving at fair market value. Testimony of witnesses on both theories was admitted and in view of the fact that the shipyard was then in the process of construction, the expenditures in its construction were recent, and the improvements were new, and in the absence of any sales by which market value of such property might be established, it was proper for the Court below to receive evidence as to the cost of construction of the shipyard if such evidence was also accompanied by evidence to show that such costs were reasonable. It was proper to receive evidence as to cost of reproduction, also."

In Stephenson Brick Co. v. United States, 5 Cir., 1940, 110 F.2d 360, 361, which involved a condemnation proceeding by the United States to condemn the land of a brick company, the Court of Appeals for the Fifth Circuit held:

"There being no established market price, the fair value at the date

of the taking of the whole plant, excluding personal property, ought to be ascertained, looking upon it as a plant organized for a business shown to be generally successful and having a good prospect; and also the fair value for sale of what was left afterward. The difference in the values is the just compensation to be paid. That the plant was making money may be considered in fixing its value for sale, but the business is not to be valued as such, nor is any loss of future profits to be compensated. What the plant originally cost, what Stephenson Brick Company paid for it at judicial sale, it not having been a sheriff's sale, and what it would cost to reproduce the plant less a fair depreciation, may all be considered, but neither is to be taken as a fixed standard."

In United States v. Two Acres of Land, More or Less, in Will County, Illinois, 7 Cir., 1944, 144 F.2d 207, 209, which involved the condemnation of a church, the court stated:

> "In the case of non-profit, religious or service properties, cost of replacement is regarded as cogent evidence of value although not in itself the only standard of compensation. But people do not go about buying and selling country churches. Such buildings have no established market values."

In the case of In re United States Commission to Appraise Washington Market Co. Property, 1924, 54 App.D.C. 129, 295 F. 950, 954, involving the condemnation of a market site, the court stated:

> "We are of opinion that the only just and legal method of arriving at the fair value of the property to be taken over by the government, under the provisions of the act, is to determine first the cost of reproduction based upon present values and deducting therefrom the amount of depreciation. This places a correct valuation upon what the authorities

term the bare bones of the plant or its physical properties; in other words, what it would cost to reproduce this building, not one that would take its place."

It is the opinion of the court that it was proper for the commission to receive evidence of reproduction cost, less depreciation, as a factor to be considered with other relevant evidence in determining fair market value.

 The doctrine of highest and best use is applicable in this case. Under such doctrine a jury or commission may consider the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future. In Olson v. United States, 292 U.S. 246, 54 S. Ct. 704, 708, 78 L.Ed. 1236, 1244, the Supreme Court stated:

> "Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held."

In Atlantic Coast Line Railroad Co. v. United States, 5 Cir., 1943, 132 F.2d 959, 963, Judge Sibley stated:

> "The sum to be paid the owner does not depend upon the uses to which he has devoted it, or if he is not using it at all upon the uses to which he expects to devote it, but is to be ascertained on just consideration of all the uses to which it is suitable. Olson v. United States,

292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205. Evidence as to all such uses may be offered by either side, the jury being the final judge under proper instructions as to what uses it was suitable for, and was most valuable."

In United States v. 25.406 Acres of Land in Arlington County, Va., 4 Cir., 1949, 172 F.2d 990, 992, the court considered the character of expert testimony which was admissible in estimating the market value of property by considering its availability for a certain use which was the highest and most profitable use for which the property was adaptable. The Court of Appeals said:

"There can be no question but that it was proper for the witnesses to take into consideration in estimating market value the availability of the property as a site for high class multi-story apartments, which, according to the evidence, was the highest and most profitable use for which the property was adaptable. Boom Co. v. Patterson, 98 U.S. 403, 407, 25 L.Ed. 206; United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336; Olson v. United States, 292 U.S. 246, 255, 257, 54 S. Ct. 704, 708, 78 L.Ed. 1236. * *"

The testimony offered by the landowners complied with the principles announced in the above cases and established that the air field, hangar and buildings on Tract No. 1 were suitable for aircraft manufacture and industrial purposes, and that because of their location and other available facilities, they would be needed in the reasonably near future for such purposes.

Rule 71A (h) reads in part:

"If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53."

This review of the report of the commission will be viewed as though it were the findings and conclusions of a master. It is not necessary for a master, or the commission, to find the detailed evidence which has been recorded. In Loew's, Inc., v. Lieberman, D.C.D.Mass.1948, 78 F.Supp. 201, 216, the court said:

"Rule 53(e) (2) of the Federal Rules of Civil Procedure * * * requires the confirmation and adoption of the Master's report unless it is clearly erroneous. Having examined the transcript of evidence, I am of the opinion that the findings of the Master are amply supported by the evidence which was before him. The request of the defendants for the additional findings consists almost entirely of a demand for the specific evidence which the Master considered when making each finding of fact. To this the defendants are not entitled. The evidence before the Master amply supports the findings, and the Court therefore adopts them as its own findings of fact."

And in Donaco Plastics Corp. v. Tray-Ware, Inc., D.C.N.D.Ohio 1950, 14 F.R. Serv. 53e.11, Case 1, the Court said:

"Exceptions Nos. 4, 7, 8, 17, 22, 25, 30 and 32 take exception to the manner in which the report was written and to inclusion and exclusion of certain facts therein; but Rule 53 prescribes no form which must be followed in the report, and the evidence and law justify the conclusions objected to in the above exceptions."

The Government relies upon United States v. Certain Parcels of Land in City of Philadelphia, 3 Cir., 1954, 215 F.2d 140, 145, but in that case the court held:

"But findings of fact need not be in any particular form. See 5 Moore, Federal Practice, p. 2664. So long as the opinion of the court below sets out clearly what the findings of fact were, Rule 52 has been effectively complied with. 5 Moore, supra, at pp. 2643–2644. The two reports of the Commissioners in this case contain extensive and detailed discussions of the factual evidence, together with the findings of the Commissioners. Both reports were expressly adopted by the court below. This procedure corresponds to the handling of findings of fact usually employed by masters. See Rule 53(e) (2), F.R.C.P. Reports of commissioners in condemnation proceedings must be treated similarly. See Rule 71A(h), F.R.C.P."

■ It is the opinion of the court that the report of the commission is substantially supported by competent evidence and that it should be adopted by the court. The objections and exceptions thereto will be overruled.

The findings of just compensation adopted by the court are those summarized on pages 9 and 10 of the report of the commission wherein the total sum of $1,198,850 is apportioned to those defendants denominated as landowners and the total sum of $69,000 is apportioned to those defendants denominated as rice tenants. These findings are amply supported by competent evidence. The alternative findings and conclusions of the commission, based upon the tender by the Government of the access deed, are rejected by the court, the tender of the deed having been refused by the landowners.

The clerk will notify counsel to draft and submit judgment consistent with the report of the commission.