**UNITED STATES of America,
Appellant,**

v.

**Frank S. BUHLER et al., Appellees.**

**No. 16752.**

United States Court of Appeals
Fifth Circuit.

April 29, 1958.

Rehearing Denied July 16, 1958.

Perry W. Morton, Asst. Atty. Gen., A. Donald Mileur, Roger P. Marquis, Washington, D. C., Malcolm R. Wilkey, U. S. Atty., Arthur L. Moller, Asst. U. S. Atty., Houston, Tex., for appellant.

Willard C. Williams, David T. Searls, Houston, Tex., Conde N. Anderson, Victoria, Tex., Jack D. Head, Jarrel D. McDaniel, Vinson, Elkins, Weems & Searls, Houston, Tex., Eastham & Williams, Houston, Tex., Stofer, Houchins, Anderson & Hartman, Victoria, Tex., for appellees.

Before RIVES, BROWN and WIS-DOM, Circuit Judges.

RIVES, Circuit Judge.

This eminent domain action involves six separate declarations of taking during the period from September 1952 to June 1955. The property condemned consists of approximately 1,471 acres out of a larger tract of approximately 4,417.59 acres of land, under the same ownership, near the City Limits of Victoria, Texas. The property was owned in fee simple by Frank S. Buhler, Orbin Buhler Beall and Mary Margaret Buhler Perry, subject to an existing rice lease on certain portions of the property owned by Frank S. Buhler, LeRoy Johnson and John H. Faubion. The appellant lists the questions presented for decision on this appeal as follows:

"(1) Whether the district court was justified in denying a demand for a jury trial and in appointing a commission under Rule 71A(h) F.R.C.P. [28 U.S.C.A.] to determine just compensation for the taking of prop-

erty located within 3½ miles of the city limits of a federal court town because the property contained some buildings, runways, swimming pools, roads and utilities from an abandoned air force base.

"(2) Whether the findings of fact and conclusions of law by the commission appointed pursuant to Rule 71A(h) Federal Rules of Civil Procedure are adequate when they fail to show how the commission reached the major points at issue and upon what evidence the award was based.

"(3) Whether the findings of just compensation by the commission were clearly erroneous because based on incompetent and irrelevant evidence and because the result was excessive and contrary to the clear weight of all the evidence."

### 1. *Denial of Jury Trial.*

The district court's opinion, concluding that the demand for jury trial should be denied and the case submitted to a commission, is reported *sub nom* United States v. 1146.32 Acres of Land in Victoria County, Texas, D.C., 132 F.Supp. 681 et seq.

The district court denied the demand for jury trial on July 22, 1955, the month following the sixth taking and the final amendment of the complaint. The commissioners were appointed on September 12, 1955, commenced hearings on October 11, and completed those hearings on January 13, 1956, after creating a record of over 2,600 pages of testimony in addition to multitudinous exhibits. The judgment of the district court confirming the commissioner's award was rendered on December 19, 1956. The proceedings in the district court have thus been stretched out over the better part of two years.

■ Jurisdiction is vested in the court itself.[1] There is no constitutional right to a jury trial in a condemnation proceeding.[2] The mode of trial, whether by the court, by jury, or by commission, is one of judicial administration, but nonetheless an important and a difficult question.

It may be noted that the more appropriate method of review of that question by this Court, that is whether by mandamus[3] before the evidence is taken or by appeal after final judgment, has not been settled. The mode of review is not argued by the parties, and we comment upon it only because it is brought to mind by our reluctance to cause further delay and expense and to set at naught the nearly two years of work devoted by the district court and the commission to this case.

The provisions of the Rule expressly vest some discretion in the district court:

" * * * Any party may have a trial by jury of the issue of just compensation * * * unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. * * *."

The Advisory Committee was not able to formulate a more definite rule after spending more time and effort on Rule 71A than on any other rule, and after the Justices of the Supreme Court had also given serious and considered atten-

---

1. "§ 1358. *Eminent domain*
  "The district courts shall have original jurisdiction of all proceedings to condemn real estate for the use of the United States or its departments or agencies." 28 U.S.C.A. § 1358.

2. Bauman v. Ross, 1897, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; Advisory Committee Note to Rule 71A(h) as it appears in 28 U.S.C.A.; 5 Moore's Federal Prac-

tice (2d ed.), Paragraphs 38.32 [1]; 7 Id. Paragraph 71A.90 [2].

3. See In re Peterson, 253 U.S. 300, 40 S. Ct. 543, 64 L.Ed. 919; Ex parte Simons, 1918, 247 U.S. 231, 38 S.Ct. 497, 62 L. Ed. 1094; La Buy v. Howes Leather Co., 1957, 352 U.S. 249, 77 S.Ct. 309, 1 L. Ed.2d 290; Annotations 98 L.Ed. 124, 41 A.L.R.2d 782.

tion to it.[4] That fact emphasizes the responsibility of the courts for a proper exercise of the discretion vested in them.

In the construction of the rule, we have the benefit of its discussion by the Advisory Committee, of the opinion of the district court at 132 F.Supp. 681, of several decisions of the Tenth Circuit,[5] and of several other district court decisions.[6] Most of these, together with other authorities, are ably discussed by Professor Moore in 7 Moore's Federal Practice (2nd ed.) Paragraph 71.90, pages 2787–2799.

The Department of Justice has almost always advocated the jury system because of its claimed expedition and economy. In a report to the Supreme Court in May 1948, a majority of the Advisory Committee recommended a rule reading in part: " * * * if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor * * *." The Advisory Committee's Note states that: "The effect of this was to preserve the existing systems in the District of Columbia and in TVA cases, but to provide for a jury to fix compensation in all other cases." 28 U.S.C.A. Pocket Supplement at p. 274. The Justices of the Supreme Court were, however, impressed by the minority views of Judge John Paul calling attention to the reasons which had convinced the Advisory Committee that the use of com-

missioners instead of juries is desirable in TVA cases.[7] Judge Paul pointed out that the same considerations applied "to other large governmental projects, such as flood control, hydroelectric power, reclamation, national forests, and others." The Advisory Committee finally recognized the inconsistency between the acceptance of the TVA system and the provision for a jury in all other cases, and in its March 1951 report to the Court, following its tentative June 1950 report, recommended subdivision (h) of the Rule in the form in which it was finally adopted.

There can be no doubt that Rule 71A(h) should be properly interpreted:

" * * * as prescribing trial by jury as the usual and customary procedure to be followed, if demanded, in fixing the value of property taken in condemnation proceedings, and as authorizing reference to Commissioners only in cases wherein the judge in the exercise of a sound discretion based upon reasons appearing in the case finds that the interests of justice so require."

That was the interpretation expressed in its report of March 18, 1952 by the Committee appointed by the Judicial Conference to give study to Rule 71A(h) and the change therein proposed by Senate Bill 1958 of the 82nd Congress. The Report of the Proceedings of a Special

4. Advisory Committee Note to Rule 71A (h) as it appears in 28 U.S.C.A.; 7 Moore's Federal Practice Paragraph 71A.01 [1], p. 2709.

5. United States v. Theimer, 10 Cir., 1952, 199 F.2d 501; United States v. Wallace, 10 Cir., 1952, 201 F.2d 65; United States v. Waymire, 10 Cir., 1953, 202 F.2d 550.

6. United States v. 2792.82 Acres of Land, D.C.E.D.S.C.1953, 114 F.Supp. 76; United States v. 4.43 Acres of Land, D. C.N.D.Tex.1956, 137 F.Supp. 567.

7. Such reasons were these:
"1. The TVA condemns large areas of land of similar kind, involving many owners. Uniformity in awards is essential. The commission system tends to prevent discrimination and provide for uniformity

in compensation. The jury system tends to lack of uniformity. Once a reasonable and uniform standard of values for the area has been settled by a commission, litigation ends and settlements result.

"2. Where large areas are involved many small landowners reside at great distances from the place where a court sits. It is a great hardship on humble people to have to travel long distances to attend a jury trial. A commission may travel around and receive the evidence of the owner near his home.

"3. It is impracticable to take juries long distances to view the premises.

"4. If the cases are tried by juries the burden on the time of the courts is excessive."
28 U.S.C.A. Pocket Supplement at p. 274.

Meeting of the Judicial Conference of the United States held March 20 and 21, 1952, transmitted to the Speaker of the House by the Chief Justice under date of June 4, 1952 (H.Doc. No. 490, 82 Cong., 2nd Session), repeats that same interpretation, and contains the following:

"The Committee recommended that the Conference approve of its views and interpretation of the rule.

"The Conference approved of the recommendations of the Committee, including its interpretation of the rule, and directed that the Director inform the Congress of this action."

█ The language of the rule was carefully chosen to express that meaning. Any party is given a right to a jury trial on timely demand, *"unless* the court in its discretion orders that, because of the *character, location, or quantity* of the property to be condemned, or for *other reasons in the interest of justice,* the issue of compensation shall be determined by a commission of three persons appointed by it." (Emphasis supplied.) To justify denial of a timely demand for jury trial, it is essential that the exercise of the court's discretion be based upon some exceptional reasons in the interest of justice, such as the character, location, or quantity of the property to be condemned.

█ An unsupported conclusion, that the appointment of a commission will avoid delay and be in the interest of justice, clearly will not suffice. United States v. Theimer, 10 Cir., 1952, 199 F. 2d 501. The cases in which denial of a timely demand for jury trial are justified certainly include those similar to TVA cases (see Footnote 7, *supra*: that is, where large areas held by many small landowners, or property too distant for a jury to view the premises are involved. In such cases, the court's discretion is exercised because of the *location* or *quantity* of the property to be con-

demned. The present case is not similar to a TVA case, for the district court found that the property condemned was exceptional neither in *location*[8] nor in *quantity*. It held that the appointment of a commission was warranted because of the exceptional *character* of the property, thus described in its opinion:

"The land in question is that taken and used by the United States Air Forces as Foster Air Force Base in Victoria County, Texas. Foster Air Force Base was originally built by the United States Army Air Corps about 1940 or 1941 upon the tract of land described in plaintiff's Declaration of Taking No. 1 recited to contain 1,144.71 acres of land, under a temporary lease from the defendant landowners. At the conclusion of World War II the air base was abandoned, the lease terminated, and the land returned to the defendant landowners with the permanent improvements thereon. Such improvements include 'a residence occupied by the defendant Frank S. Buhler, two barns, an incinerator building, seven warehouses, an airplane hangar building, three swimming pools, 120,000 square yards of paved roadways, 970,700 square yards of concrete airfield runways and pavement, a storm sewer system, a sanitary sewer system, complete water distribution plant and water mains, two water wells, gas lines, fences, and 3,-500 linear feet of railroad tracks. The portion of such property occupied by the warehouses, airplane hangar, and railroad tracks was being used as an industrial warehouse area at the time of the taking. That portion of the tract which had been subdivided by paved roadways was ideally suited for residential development. The remainder of the tract upon which the airfield runways and pavement were located, of

8. The Commission reported: "The Commission has not viewed the property or its surroundings and has decided, in the exercise of their discretion, that they should not do so."

course, was primarily adaptable for use as an airfield.' (Quotation from defendants' verified motion.) Other exceptional and extraordinary circumstances or conditions set out in defendants' motion have been considered but will not be set out in full in this opinion." United States v. 1146.32 Acres of Land, supra, 132 F. Supp. at page 682.

Other exceptional circumstances, not mentioned by the district court, are the complications arising from six separate takings of different tracts of land extending over nearly three years, the estates taken differing widely,—fee simple estates, a fee simple with a mineral reservation, a perpetual easement for drainage, and an avigation easement for a period of fifteen years; the claim that several of the takings resulted in severance damages to part of the remainder of the 4419.59 acre tract; and the determination of the loss to the rice tenants arising from at least three of the takings.

■ While Rule 71A(h) vests in the district court only a limited discretion to deny trial by jury, it is not strictly limited to TVA-like cases which involve property exceptional in *location* or in *quantity*, but extends also to considerations of the *"character"* of the property to be condemned and to *"other reasons in the interest of justice."* The discretion is vested primarily in the district court. Granting a jury trial should be the rule, and its denial the exception.

Under all of the circumstances of this case, however, we hold that the district court did not abuse its discretion in denying the demand for jury trial.

2. *Adequacy of Commission's Findings and Conclusions.*

■ The report of the commission filed February 13, 1956 is extremely general in nature. It sets forth the estates condemned in the several takings and summarizes some of the procedure adopted by the commission. It then tabulates the ultimate conclusion, and discusses the validity and subsistence of the rice lease. This latter issue was of no concern to the appellant, since it relates merely to the distribution of the total award. The total compensation due it found to be $1,267,850.00 divided as follows: to the landowners $1,198,850.00, to the rice tenants $69,000.00. It discussed whether the landowners could be required to accept a deed which the Government had tendered to them, granting a right-of-way connecting some of the lands over a substitute access road and canal and concluded that the landowners and rice tenants must mitigate their severance damages by the use of the substitute access road and canal. Upon that basis, it tabulated alternative awards which together were $58,425.00 less than the awards made without taking the access road and canal into consideration. It stated some general principles of the law of eminent domain, which we have quoted in the margin.[9] It made eight rulings on the

9. "In determining just compensation in this case, the Commission, keeping in mind the admonition expressed in United States v. Miller, 317 U.S. 369, [63 S.Ct. 276, 87 L.Ed. 336], that just compensation guaranteed to a citizen by the Fifth Amendment to the Constitution of the United States, means the full and perfect equivalent in money of the property taken to the end that the owner be put in as good position pecuniarily as he would have occupied if his property had not been taken, has undertaken to measure compensation solely and strictly by the standards of market value as defined in the Federal Courts and limited to the market value obtaining at the time of the respective takings under inquiry. The Commission has particularly weighed the

evidence in the light of the caveat pronounced in Olse[o]n v. United States, 292 U.S. 246 [54 S.Ct. 704, 78 L.Ed. 1236], to the effect that elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions, as well as in judicial ascertainment of truth.

"The Commission has been equally mindful of the rule that it is not physical adaptability alone, but rather economic adaptability and demand which deter-

admissibility of evidence which had been reserved for disposition at the close of the evidence, and concluded with a statement of its reasons for not viewing the property.

Parcel No. 1 comprised 1144.71 acres out of the aggregate of 1471 acres condemned. The $1,091,600.00 award for that parcel represents almost 90% of the total award. The report contains no discussion specifically addressed to that parcel or to the various highest and best uses—airfield, warehouse, subdivision, farming—claimed for it. The principal dispute between the parties was apparently the need vel non for the airfield and related improvements and their consequent value as such. The report failed to make any findings on that issue. The district court undertook to supply that deficiency by stating in its opinion confirming the commission's report:

> "The testimony offered by the landowners complied with the principles announced in the above cases and established that the airfield, hangar and buildings on Tract No. 1 were suitable for aircraft manufacture and industrial purposes, and that because of their location and other available facilities, they would be needed in the reasonably near future for such purposes."

That bare conclusion, without more, is of little aid to this court in reviewing the determination of just compensation. The findings do not disclose the different highest and best uses for various portions of the property, the extent, if any, to which reproduction costs were considered in arriving at any part of the award, nor the economic units into which the property was divided in considering and determining its value.[10] Before we come to a review of the ultimate question of just compensation, we feel the need of more adequate findings of fact and conclusions of law. See United States v. Cunningham, 4 Cir., 1957, 246 F.2d 330.

In vacating the judgment and remanding the cause, we leave with the district court the widest permissible discretion as to its remand of the cause with accompanying directions and instructions to the commission, as to whether further evidence may be offered, and as to any and all other matters including the final judgment to be entered by the court.

In the event of another appeal, the parties may make use by reference of the whole or of such parts of the present record as they find advisable, as well as of any of their briefs on this appeal. The judgment is, therefore, vacated and the cause remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.

mines market value, as was held, in effect, in Cameron Development Co. v. United States [5 Cir.], 145 F.2d 209.

"Keeping in mind that the original ownership was a very large one which, by virtue of the erection and installation of different types of improvements on certain parts thereof, had become both physically and economically adapted to different uses in various portions, the Commission has weighed the evidence in the light of the rule that the property must be valued as a whole and not piecemeal, as declared by the Court of Appeals for the Fifth Circuit in United States v. Certain Parcels of Land in Rapides Parish, 149 F.2d 81, and has determined the amount of compensation as though the entire fee simple title were in a single ownership in accordance with the rule announced in United States v. 25.936 Acres of Land, etc. [3 Cir.], 153 F.2d 277."

10. See United States v. City of New York, 2 Cir., 1948, 165 F.2d 526, 1 A.L.R.2d 870, in connection with United States v. Certain Parcels of Land, etc., 5 Cir., 1945, 149 F.2d 81.