**UNITED STATES of America,**
**Plaintiff,**

**v.**

**3,065.94 ACRES OF LAND in the COUNTY OF TULARE, State of CALIFORNIA, etc., et al., Defendants.**

**Civ. No. 1767–ND (Tract A–104).**

United States District Court,
S. D. California, N. D.

Sept. 28, 1960.

Laughlin E. Waters, U. S. Atty., and Richard J. Dauber, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Burford, Hubler & Burford, by Burke E. Burford, Porterville, Cal., for defendant Clemmie Gill.

*HALL, Chief Judge.*

The plaintiff United States and the defendant Clemmie Gill, as owner of Tract A–104, have each excepted to the report of the Commission fixing just compensation for said tract.

The Commission was appointed and acted under the provisions of F.R.Civ. P. 71A(h), 28 U.S.C. Its report is set forth in full in Footnote 1 attached.

■ There are only three issues raised by the filing of a complaint in condemnation, viz.: (1) the right to take, i. e., "public use;" (2) "just compensation;" and (3) to whom the just compensation should be paid, i. e., the owners, lienholders, and the like.

■ What is "just compensation" is the only matter referred to the Commission in this case, and it is the only thing that can be referred to the Commission under F.R.C.P. 71A(h) as "trial of all issues shall otherwise be by the court."

The defendant raised three exceptions, one of which (Number 2) was withdrawn at the hearing on September 19, 1960, and the plaintiff raised what are designated as three exceptions. Except for one of defendant's exceptions to the ruling upon the admissibility of evidence, and two of the exceptions of plaintiff— one on the disqualification of a member of the Commission, and the other on the wrongful admission of testimony—the exceptions all, more or less, go to the

I. Finding and Report of Committee.

The above entitled case was referred to the undersigned as a Commission on May 12, 1959 by order of Peirson M. Hall, United States District Judge, for determination of the issue of just compensation in accordance with F.R.C.P. 71A, for all of the tracts of land involved in said case.

The Commission set the hearing of Tract A–104 for December 1, 1959, at 10:00 o'clock a. m. in the Extra Courtroom in the Tulare County Court House, Visalia, California, and the matter was duly heard starting on that date, Laughlin E. Waters and Richard J. Dauber, by Richard J. Dauber, appearing for the United States, and Burford, Hubler and Burford, by Burke E. Burford, appearing for the defendant, Clemmie Gill, as former owner, and subsequent hearings were held on December 2, 3, 21, 22 and 23, 1959, and January 5 and 6, 1960.

The Commission heard the oral testimony and received certain documentary evidence. An index of all exhibits marked for identification is attached hereto and said list indicates the date, if any, on which each exhibit was received in evidence. All exhibits whether received in evidence or not are filed with this report.

The Commission inspected the premises on January 6, 1960, accompanied by counsel for the respective parties, and the matter was submitted for decision on January 6, 1960.

It was stipulated by the respective parties during the course of said proceeding that none of the rights of the Southern Pacific Company in the subject property, if any, were to be evaluated in this hearing.

The Commission met in conference to consider the evidence on January 19, 1960 and then and there reached its conclusions as embodied herein.

The Commission finds as follows:

1. That there is no dispute that the former owner of Tract A–104 is Clemmie Gill, and no other person or persons appeared at the time of the hearing to offer evidence or make any claim of ownership of any interest in Tract A–104.

2. That the property taken by the United States in Tract A–104 was part of a larger holding by said Clemmie Gill, said larger holding before the taking by the United States consisted of 507 acres which was composed of grazing land and river bottom land used as part of a cattle ranching operation. There were no improvements on said property other than fences, corrals, a well and a pump.

3. That the remainder of the larger holding after the taking consists of 377 acres.

4. That the fair market value of the entire parcel of which the portion taken was a part, immediately before the taking was $65,600.

5. That the fair market value of the remainder, immediately after the taking was $28,450.

The Commission, therefore, finds the just compensation for the taking of Tract A–104 to be $37,250.

Dated at Visalia, California, this 25th day of January, 1960.

Respectfully submitted,
ROBERT E. MOOCK,
Chairman
W. VERNON MORRIS
JOHN P. HYLAND.

form and contents of the report by the Commission, and its failure to include certain specified matters which are detailed in the exceptions.

■ Those exceptions which go to the form and content of the Commission's report are in effect exceptions that no special findings of fact were made. The ultimate fact to be found by the Commissioners was the amount of just compensation. It is the rule that just compensation in a proceeding of this kind represents the difference between fair market value of the entire unit of property of an owner at the time of taking, and the fair market value of the part remaining after the taking. United States v. Waymire, 10 Cir.1953, 202 F.2d 550, 554. That is just what the Commission did. Everything else before the Commission was evidentiary, collateral and subordinate to that ultimate conclusion.

■■ It is the general rule that it is necessary and sufficient for the findings to state the ultimate facts found by the court, and a statement or setting-out of evidence, or probative, evidentiary or subordinate facts is neither necessary nor proper. 89 C.J.S. Trial § 611, p. 427. Such a finding may be as general as the verdict of a jury, and have the same effect. Aetna Life Ins. Co. v. Board of County Supervisors, 10 Cir., 79 F. 575; United States v. Atchison, T. & S. F. R. Co., 10 Cir., 270 F. 1; Ewert v. Thompson, 8 Cir., 281 F. 449–451; Pennok et al. v. Roxana Petroleum Co. of Okl. et al., 8 Cir., 289 F. 416, 419–420.

■ I see no reason for applying a different rule to the report of 71A(h) Commissioners.

■ Furthermore no special findings were requested of the Commission by either party, and while I find no cases relating to the failure to make such request to a master, it is logical that the same hornbook rule would apply where there is a limited reference, as here,

which precludes a party from objecting to a general verdict where no special verdict or findings were requested.[2]

It must be kept in mind in considering the Commission's report that by Rule 71A an action in condemnation prescribes rules concerning the pleadings and conduct of the case which differ greatly from all other kinds of civil and equitable actions. Special provisions are made concerning the complaint, its contents, joinder of parties, process and its service, appearance and answer, amendment of pleadings, substitution of parties, dismissal of action, all of which are different than the rules applicable to the usual civil action. Subdivision (e) of this rule, which permits a property owner to appear at the trial and present evidence as to the amount of compensation to be paid for his property whether or not he has previously appeared or answered (a procedure unheard of in other civil actions), points up clearly the impossibility of applying many of the rules governing other civil actions to condemnation proceedings. No answer is required to be filed. Thus, for instance, no issue is or can be raised by the complaint as to the highest and best use of all or various portions of the property, or of severance and the like. Such issues are certainly not alleged in the complaint, and properly so. Indeed, the government has, in instances where such matters were alleged in an answer, moved to strike the answer.

Furthermore, it is to be noted that subdivision (a) of Rule 71A makes applicable the Rules of Civil Procedure for United States District Courts *except as otherwise provided in this Rule.* Rule 71A(h), which provides for the appointment of a Commission, *makes only specified rules applicable when a Commission is appointed,* as follows:

"If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be

2. See F.R.C.P. 49(a) relating to special verdicts. And A. M. Webb & Co. v. Robert P. Miller Co., D.C.Pa.1948, 78 F.

Supp. 24, at page 27, reversed on other grounds 3 Cir., 176 F.2d 678.

governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. *Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53.* Trial of all issues shall otherwise be by the court." (Emphasis added.)

The italicized portion of the above rule is of significance in its omission of paragraph (1) of subdivision (e) of Rule 53 which prescribes the contents and filing of a master's report.

█ The purpose of Rule 71A was to make uniform and to simplify condemnation proceedings. And the fact that the rule thus omits paragraph (1) of subdivision (e) of Rule 53 leads me to the conclusion that it is not and was not intended to be applicable to the reports of Commissioners appointed under Rule 71A(h).

Thus I do not agree with United States v. Cunningham, 4 Cir.1957, 246 F.2d 330; United States v. Buhler, 5 Cir.1958, 254 F.2d 876; United States v. Certain Parcels of Lands in City of Philadelphia, 3 Cir.1954, 215 F.2d 140, so heavily relied on by the government *insofar as they deal with the form and contents of the Commissioners' report.*

█ I am satisfied that it is clearly the law that the findings and awards of the Commission must be accepted by the court unless they are clearly erroneous, F.R.C.P. 53(e) (2) [made specially applicable by F.R.C.P. 71A(h)] reads in part as follows: "in an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." United States v. Waymire, 10 Cir.1953, 202 F.2d 550, 553; United States v. 1,000 Acres of Land, More or Less, in Plaquemines Parish, La., D.C.E.D.La.1958, 162 F.Supp. 219; United States v. 15.3 Acres of Land in City of Scranton, Pa., D.C.N.D.Pa.1957, 154 F.Supp. 770.

█ Furthermore, *no exception was made by either party to the finding of the Commission that the just compensation for taking of Tract A-104 was $37,-250.*

It would thus seem to me that no exception being made to the end result, neither party is in a position to raise any question concerning the *form or contents* of the report.

The general conclusions I have heretofore set forth would not apply to the plaintiff's Exception Number 2 as to the alleged disqualification of the Chairman of the Commission, or to defendant's Exceptions Number (1) and Number (3) which will be shortly dealt with, as will plaintiff's Exception Number (3) which partly goes to the form and contents of the report, but which I will consider as if it did not.

Exception Number (1) of plaintiff, assigning seven matters which it contends the report should have dealt with, goes entirely to the form and content of the Commissioners' report. Such matters have no place therein. They all deal with matters which are evidentiary, subsidiary, and collateral to the ultimate conclusion of the amount of just compensation.

In substance, the government contends by Exception Number (1) that the Commission should set forth what *use* it made of the testimony in arriving at its valuation, and asserts, among other things, that the Commission failed to recite to what extent, if any, the Commission considered the testimony of experts in assigning different values to different portions of the property, and the severance damages.

If the government, without requesting special findings, is correct in this contention, there would be no limit to what should be included in the Commissioners' report. The report would have to indicate, for instance, what weight was given to each of the many so-called comparable sales used by an expert; what the value of each fence, gate and well was; the replacement cost of a well or other water supply; the amount of water

consumed by a grazing adult animal, or cow-and-calf operation, when there is no shade, and the value assigned to shade trees for grazing cattle, and the amount, if any, used as replacement cost of artificial shade, the value assigned to the different grasses (six of them) which naturally grow on the property, and their relative quality as feed for grazing cattle; and many other things, all of which, as well as severance damage, are purely evidentiary and collateral to the issue of just compensation, and are but some of the numerous things which go to the final expression of opinion by each expert on the total sum necessary to make just compensation.

■■■ The above are just a few of the things which point up, not only the impracticability of requiring such a detailed report, but also to the unsoundness of the government's position in its Exception Number (1), which is overruled.

Coming now to the exceptions which do not deal with the form and contents of the report:

Plaintiff's Exception designated Number (2) is that the Chairman of the Commission should have disqualified himself from hearing the issues in this case because of his prior relationship with both of defendant's expert witnesses.

The Chairman of the Commission stated to the record that he had previously employed each of defendant's expert witnesses as experts in prior cases wherein he was attorney for one of the litigants. He then stated that he did not deem himself disqualified, and proceeded with the hearing.

■■■ The mere fact that one who is acting in a judicial capacity, such as Chairman of a Commission in this instance, had previously employed a witness who might appear before him is not a sufficient ground of disqualification, and that exception is overruled.

The other Exceptions—defendant's (1) and (3), and plaintiff's (3)—deal with evidence and testimony that was either adduced or offered during the course of the testimony of expert witnesses.

The general rules concerning the testimony of expert witnesses, permitting hearsay testimony, are often overlooked but must be kept in mind. Each of the matters complained about were matters which could only get into the record under the exception to the hearsay rule permitted in the testimony of an expert. The reason for that exception, as trial judges tell jurors day after day, is that the expert has heard something which he takes into consideration in expressing his ultimate opinion, in this case opinion of value; and that such matters are to be considered only in weighing the expert's ultimate conclusion. Into that category fall the expert's statements of so-called comparable sales, the highest and best use of all or a portion or portions of property, severance damage, the existence or non-existence of shade trees and their value for cattle, the grades and types of soil, the capabilities of land for rock and gravel, or for growing different crops and grasses and their quality as cattle feed, the possibilities and costs of developing water, and the like. None of them are direct evidence of value, but are only of worth to the trier of the facts in determining what weight, if any, to give to the expert's opinion of value.

I come now to a consideration of defendant's Exceptions Number (1) and Number (3) and plaintiff's Number (3):

Defendant's Exception Number (1) is as follows:

"That the committee erred in its ruling upon the admissibility of evidence when it ruled that evidence of the per acre price paid for gravel removed from property adjacent to the property taken was not admissible."

■■■ This exception goes to the ruling of the Commission that the testimony of one Mark Lee, an expert witness, that a certain sum was paid per acre for gravel on adjacent land was not admissible. The ruling of the Commission was correct in this respect.

The Commission permitted the testimony concerning the existence of rock and gravel deposits on the subject land,

and stated they would permit testimony concerning the "going value" but would not consider the testimony as to specific prices paid for specific acreages. In any event, the witness Mark Lee was called as an expert. The ultimate thing sought by his testimony was his opinion of just compensation (sometimes expressed as "fair market value" and at other times expressed as "the amount of money needed to make defendant whole"), and the testimony sought to be adduced as to the price paid, in reality, could be nothing more than a factor used by the expert for consideration in expressing his ultimate opinion of total value of just compensation. The Commission held, and properly so, that it was not evidence of value. United States v. Land in Dry Bed of Rosamond Lake, D.C.S.D.Cal.1956, 143 F.Supp. 314, and the cases therein cited, sustain these conclusions as to defendant's Exception Number (1) although plaintiff's counsel seems to read that case differently.

The Commission did permit the witness to give his testimony, on an offer of proof, and then ruled that it was inadmissible, which brings us to the third ground of objections of the defendant which reads as follows:

"That the Committee erred in failing to report in its report that evidence was taken and a record of excluded evidence was made under Rule 43(c) at the request of this *defendant* of testimony of witness Mark Lee of prices paid for gravel lands of the 'going price' of gravel removed from lands adjacent to lands taken herein."

Rule 71A(h), F.R.C.P., *makes certain provisions only* of the rules relating to masters applicable to proceedings before a Commission appointed under Rule 71A(h). One of the provisions which is applicable is Rule 53(c), the last sentence of which provides as follows:

"When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule

43(c) for a court sitting without a jury."

It is noted that Rule 53(c) relates back to Rule 43(c) in which the following language appears:

"In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

█ That is what was done in the instant case, and the transcript of the entire evidence, together with all of the exhibits, has been brought to the court, the transcript has been read in full, and I find no merit in defendant's Exception Number (3). In short, I find that the Commission complied fully and strictly with the provisions of Rule 53(c) and Rule 43(c).

Plaintiff's Exceptions Number 3(a) and Number 3(b) will be considered together, and concern testimony which the government asserts "permeates the record with irrelevant and immaterial matter and speculative and incompetent testimony."

Exception Number 3(a) concerns testimony by an expert of sales of aggregate bearing land in Yolo and Sacramento Counties.

Exception Number 3(b) urges that the testimony concerning a sale of an alleged rock and gravel deposit in the County of Yolo was clearly incompetent and inadmissible because Yolo County had the power of condemnation.

█ The testimony concerning the sales of aggregate bearing lands in Yolo and Sacramento Counties and the sale of the land in Yolo County, it must be remembered, went only to the weight given to the testimony of the witness who was there as an expert. His ultimate testimony was his opinion of the fair market value of the property at the time of taking. Whether or not the Commission gave any weight to the testimony of any of the last-mentioned

items is not disclosed by the report, and indeed it need not be and should not be. Otherwise, the Commission would have to report concerning almost every question and answer raised in a condemnation proceeding, and the report would result in a haggling over all inconsequential, collateral and evidentiary matters which the parties might see fit to raise. Plaintiff's Exceptions Number 3(a) and Number 3(b) are overruled and disallowed.

Plaintiff's Exception Number 3(c) is that it was error for the Commission to permit evidence of the price paid for gravel land adjacent to the subject property on an offer of proof, after the Commission had ruled the evidence inadmissible.

 As seen from what has heretofore been said, it is the duty of a Commission, when a party so requests, to make a record of the evidence offered and excluded. This was done. The transcript of the entire evidence was here and was read by the Court, and there was no error. Plaintiff's Exception Number 3(c) is overruled.

The report of the Commission is approved and adopted by the Court.

A hearing date will be set to determine who is the owner of the property, to whom just compensation should go, which is the only other issue remaining, after which, judgment will be prepared in the usual form for just compensation as to Tract A–104 in the sum of $37,250.

Certificate Under 28 U.S.C. § 1292(b).

The within case is a condemnation proceeding. As originally filed, it involved 33 parcels or tracts of land with 272 designated owners and a total of 3,065.94 acres of land.

An order was made in May, 1959, appointing Commissioners under F.R.C.P. 71A(h). Case No. 2039–ND, a later-filed case involving the same project, viz.: Success Dam and Reservoir, was referred to the same Commissioners under the provisions of the above-mentioned Rule.

The Commissioners have conducted hearings on several parcels. They are proceeding as promptly as possible to conduct further hearings. The Court has appointed Commissioners under Rule 71A(h) in the cases involved in the taking of property for Terminus Dam and Reservoir, and in the cases involved in the taking of LeMoore Air Base, and in the cases involved in the taking of Casitas Dam and Reservoir, each of which involves a great many parcels in many different ownerships. The Commissioners in all of said cases have been proceeding with hearings on the question of just compensation, and have heard many days of testimony. A separate report is required for each parcel, as each parcel is, in effect, a separate case.

The within report is the first report received from any of the Commissions on property upon which a hearing has been had.

This Court hereby certifies that the within order involves controlling questions of law as to which there is substantial ground for difference of opinion as follows:

(1)—As noted in the above Memorandum, this Court does not agree with the cases: United States v. Cunningham, 4 Cir.1957, 246 F.2d 330; United States v. Buhler, 5 Cir.1958, 254 F.2d 876; United States v. Certain Parcels of Lands in City of Philadelphia, 3 Cir.1954, 215 F.2d 140, *insofar as they deal with the form and content of the Commissioners' report;*

(2)—The parties not having excepted to the amount of just compensation are precluded from objecting to the *form and content* of the Commissioners' report;

(3)—The parties not having requested any special finding are precluded from objecting to the findings made by the Commission.

 In the ordinary course of things, a judgment will not be entered in the within matter until after trial as to ownership of the property and as to who is entitled to the amount awarded as

just compensation. Neither party would be entitled to appeal until after the entry of judgment. The United States being a party, each party would have 60 days under F.R.C.P. 73(a), from the date of entry of judgment, to notice its appeal, and an appeal would not ordinarily be disposed of for some considerable time thereafter. In the meanwhile, the owners of the properties which have been taken in these condemnation proceedings will be unable to collect for just compensation if any such appeals are taken.

■ Therefore, the undersigned District Judge hereby also certifies that an immediate appeal from this order will materially advance the ultimate termination of the litigation involved in the within suit as well as the many other parcels involved in this and many other cases.