**UNITED STATES of America,**
**Plaintiff,**

v.

**561.14 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS (Tract No. 915), and Thomas V. Jones, et al., and Unknown Owners, Defendants.**

**Civ. A. No. 1553.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

April 5, 1962.

Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Sam Sexton, Jr., Fort Smith, Ark., Marvin Holman, Clarksville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

The complaint in this case was filed October 17, 1960, along with a declaration of taking. On October 19, 1960, the court entered an order delivering the possession of the various tracts included in the suit to the plaintiff.

On December 15, 1960, Commissioners were appointed as provided by Rule 71A, Fed.R.Civ.P., 28 U.S.C.A., and on March 15, 1962, filed their report herein.

On March 30, 1962, the landowners filed their exceptions to the report of the Commissioners, which included their brief and argument in support of their primary contention that the award of just compensation made by the Commissioners is entirely inadequate. In addition to the contention that the award is inadequate, the landowners contend that the award is contrary to the evidence; the damages awarded were greatly less than the actual amount of the damages caused by the taking of the land, and they are entitled to an award of damages greatly in excess of the amount awarded by the Commissioners.

Their argument is divided into three parts:

(1) "The report of the Commission is nothing more than a simple conclusion as to the value of the lands and is inadequate for forming a basis for review and should be stricken in its entirety."

(2) "The Commission erred in determining just compensation upon the basis of 'the value of the entire tract, exclusive of the mineral interest.'"

(3) "That the Commission erred in failing to award to the defendants an amount equal to the reasonable market value of the land at the time of the taking."

The Government has not submitted a brief in opposition to the exceptions, but in view of the conclusion of the court, it does not appear necessary to delay the disposition of the exceptions.

In support of the first contention made in the argument, the landowners cite United States v. Cunningham, (4 Cir. 1957), 246 F.2d 330; and United States v. 2,477.79 Acres of Land, etc., in Bell County, Texas, (5 Cir. 1958), 259 F.2d 23, and cases therein cited.

■ The court has studied the decisions and has no quarrel with the general principle announced therein, but a comparison of the report of the Commissioners in the cases relied upon with the report of the Commissioners in the instant case discloses at once that the report of the Commissioners in the instant case is entirely adequate.

■ The second and third arguments are completely answered by a consideration of the instant report, which discloses that the entire ownership of the landowners was 370.36 acres, from which the fee in 126.06 acres, with minerals reserved to the owners subordinated to the right of the Government to flood, was taken.

The tract was viewed by the Commissioners on December 4, 1961, after notice to the landowners of the date that the land would be viewed, but neither of the owners accompanied the Commissioners in their view of the property.

A hearing was held at the Courthouse at Clarksville, Arkansas, on March 6, 1962, for the purpose of fixing just compensation. The Government appeared by Robert E. Johnson, Assistant U. S. Attorney, and the landowners appeared by their attorneys, Mr. Sam Sexton and Mr. Marvin Holman.

The land, its location, improvements and characteristics were fully described by at least one witness for the landowners and one for the Government.

Beatrice Johnson, one of the owners, testified that a part of the tract was acquired from her parents who had owned it since 1900 or 1901; that the land thus acquired was creek bottom land on which there were five water wells, all of which were taken by the Government. She valued the land taken at $150.00 per acre, or $18,909.00, and the value of the land remaining before the taking at $50.00 per acre, or $12,215.00, and the value after the taking at $25.00 per acre, or $6,107.-50.

John Johnson, the other owner of the land, testified that he had been a farmer and a construction worker, but that he was presently engaged in farming; that he had 71 head of cattle upon the whole tract, and that the best use of the tract is for a cattle ranch. He valued the tract taken at $175.00 per acre, or $22,060.50, and testified that the value of the part not taken was $80.00 per acre before the taking of the 126.06 acres, or $19,544.00, and after the taking of that acreage that the remaining part was worth $40.00 per acre, or $9,772.00.

Harold Lewis, an insurance agent and real estate appraiser for the Veterans Administration, Federal Housing Administration, and Small Business Administration, but who had had no experience with real estate brokering in connection with farm lands, testified that the market value of the entire ownership before the taking was $28,000.00; that the value of the remainder of 244.31 acres was $6,-100.00.

Bert Carlton, a real estate broker since 1959 and formerly a Lieutenant Colonel, with some experience in land acquisition for Government installations, testified that the fair market value of the entire ownership before the taking was $23,-169.00 and that the value of the remainder after the taking was $7,329.00; that the best use of the land was as a stock farm. He also testified that the mineral estate is of value in procuring a buyer for land.

Sterlin Hurley, a banker, testified that he had looked the property over and in his opinion the market value of the entire tract before taking was $22,200.00, and the value of the remainder $6,200.00. He also stated that he thought the entire ownership would support 50 to 75 cow-units, meaning a cow and her increase.

The above was all of the testimony introduced by the landowners.

O. A. Mabry, a staff appraiser for the Corps of Engineers, whose qualifications were entirely familiar to the Commissioners, after giving the location of the land, proceeded to describe the various segments of the entire ownership, and stated that the best use of the entire tract

is as a cattle ranch and for growing timber, but that the timber on the tract had been closely cut. He fixed the market value of the entire tract before taking at $28,850.00, and the remainder after taking at $19,750.00. He placed a valuation on the minerals at $25.00 per acre and the cut-over land at $25.00 per acre.

A. R. Jordan, a real estate broker of Russellville, Arkansas, fixed the market value of the entire tract at $27,890.00, and the value of the remainder after taking at $19,770.00.

The landowners were given leave to file a certificate of the Oil and Gas Commission showing where and when an oil and gas well was drilled in Sec. 26 or 27, T. 9 N., R. 22 W., and whether and when abandoned. Apparently the landowners did not obtain such certificate, but the Chairman of the Commission did obtain the certificate and filed a supplemental report on March 20, 1962, which shows that a well was commenced on September 9, 1960, in Sec. 26, T. 9 N., R. 22 W., which includes some of the land involved in this proceeding, and was abandoned and plugged on January 5, 1961. The drilling was completed on December 1, 1960. It thus appears that as of the date of the taking on October 19, 1960, the presence of gas or other minerals in the property was neither proved nor disproved.

The landowners and their witnesses fixed the value of the entire tract and the value of the remainder and calculated the difference, or the amount to be recovered, as follows:

|  | Value of Whole Before Taking | Value of Remainder After Taking | Amount of Damages |
|---|---|---|---|
| Beatrice Johnson | $31,124.00 | $ 6,107.50 | $25,016.50 |
| John Johnson | 41,604.50 | 9,772.00 | 31,832.50 |
| Harold Lewis | 28,000.00 | 6,100.00 | 21,900.00 |
| Bert Carlton | 23,169.00 | 7,329.00 | 15,840.00 |
| Sterlin Hurley | 22,200.00 | 6,200.00 | 16,000.00 |

The witnesses for the plaintiff fixed the amounts as follows:

|  | | | |
|---|---|---|---|
| O. A. Mabry | 28,850.00 | 19,750.00 | 9,100.00 |
| A. R. Jordan | 27,890.00 | 19,770.00 | 8,120.00 |

Following the appointment of the Commissioners and the filing of their oaths, they were instructed on all questions which might be encountered by them in the discharge of their duties. No objection has been made to any of the instructions given to the Commissioners by the court, and it is apparent that no error of law was committed by the Commissioners in the hearing. The report discloses that they gave full consideration to all of the testimony and circumstances. They are conscientious and well qualified. They had viewed the land and were thus able to evaluate the testimony of each witness, and after having considered all of the testimony, they concluded that the value of the entire tract, exclusive of the mineral interests, was $19,000.00; that the value of the remainder, exclusive of the mineral interests but including the structural improvements thereon, was $9,000.-00, a difference of $10,000.00, which the Commission fixed and awarded as just compensation, including severance damages, for the taking of the 126.06 acres.

In the case of United States v. 992.61 Acres of Land, etc., in Johnson and Logan Counties, Ark., (W.D.Ark.1962), 201 F. Supp. 578, the court beginning at page 579 stated the rule which the court must follow in considering a report of Commissioners appointed under Rule 71A, Fed. R.Civ.P., and beginning at page 580 de-

fined just compensation. In view of the fact that that decision is available to the attorneys for the parties, it does not seem necessary to repeat what this court said therein. Suffice it to say that the court does not believe that the findings of fact and the amount fixed as just compensation are clearly erroneous. Likewise, the court, after reviewing the entire report, does not have a definite and firm conviction that a mistake has been committed by the Commissioners. Therefore, the findings and award of $10,000.00 as just compensation, including severage damages, for Tract No. 915, herein involved, should be approved and confirmed.

In an amendment to the exceptions filed March 31, 1962, the landowners stated:

"That should the court, upon review of the exceptions to the report of the Commissioners, determine that other or further proceedings are necessary or appropriate, that such other or further proceedings should be conducted by trial to a jury."

As hereinbefore set forth, it is not necessary to consider the amendment, but since the question has been raised the court feels that it is appropriate to consider the same.

The Government on March 22, 1960, filed its first suit to acquire property for use in the construction and operation of the Dardanelle Lock and Dam on the Arkansas River. The court, after a full consideration of all the factors involved, entered an order in that case, Civil Action No. 1528, Ft. Smith Division, appointing Commissioners under Rule 71A, Fed.R.Civ.P., in which the court, inter alia, stated:

"While there is involved in this suit only the question of just compensation for the tracts above referred to, yet the tracts are only a part of a total of approximately 38,-600 acres to which the Government has obtained title or will obtain title by the filing of additional suits. The fee title of 32,400 acres has been or will be acquired, and flowage easements have been acquired or will be acquired on the remainder. The major portion of the land to be acquired through this court lies in Johnson and Logan Counties, although several tracts lying in Franklin County will be acquired and, in addition thereto, certain tracts lying in Yell County will be acquired through this court for the reason that they are contiguous to other tracts lying within the Western District of Arkansas and owned by residents of this District. Approximately 600 ownerships are involved, and while the taking line has not been definitely established, it is estimated that there will be approximately 800 tracts involved. Situated upon these tracts are between 50 and 75 sets of improvements.

"The area to be acquired is situated in the Arkansas River Valley, and consists of farms in varied states of development. Much of the land is valuable agricultural land and is divided into ownerships with irregular boundaries, many of which are in dispute.

"Most, if not all, of the area is underlaid with minerals of various kinds, including oil and gas, and practically all of the land has been leased for development of the oil and gas, and gas is being produced in commercial quantities. Many of the tracts are traversed by creeks, bayous and lakes of varying sizes. In acquiring the land necessary for use by the plaintiff in the building and operation of the project, a great number of tracts of varying quantity and irregular boundaries will be severed from now-operating units and invariably the question of severance damage will arise.

"Generally speaking, the property acquired and to be acquired is valuable, not only for agricultural purposes but for oil and gas, and in the opinion of the court, because of the

character, location, and quantity of the property to be condemned, in the interest of justice the issue of just compensation should be determined by a Commission of three prsons.

"If a Commission is not used, the landowners will be required to travel from 50 to more than 100 miles to attend court, and it will constitute a hardship on said landowners to transport or cause to be transported and to pay the expenses of their witnesses to Fort Smith, Arkansas. It is highly impractical and expensive to transport a jury to view the tracts involved in the area, and the court is convinced that evenhanded justice to all concerned requires that just compensation be determined by a Commission composed of experts in the valuation of property who, after inspection of the property and hearing of the testimony of witnesses produced by the parties in interest, should be able to determine said compensation without an injustice to anyone involved."

After the instant suit was filed October 17, 1960, the court on December 15, 1960, entered an order appointing the same Commissioners, and by reference made the order entered in Civil Action No. 1528, on December 14, 1960, a part thereof.

The landowners did not file any answer to the complaint as indeed it was not necessary to do so, but on November 18, 1960, they personally filed the following:

"John Johnson and Beatrice Johnson, defendants, state that they claim to have an interest as owners in the property described as Tract No. 915 in the complaint filed herein.

"Wherefore, defendants demand that he [they] receive notice of all proceedings affecting said property."

The Government did request a trial to a jury when it filed its complaint, but the Government did not object to the entry of the order appointing Commissioners, and the record does not now disclose any objection on the part of the Government.

In United States v. Waymire, (10 Cir. 1953), 202 F.2d 550, the court at page 552 said:

"* * * Under such provision in the rule, any party to a condemnation proceeding is ordinarily entitled as a matter of right to trial by jury of the issue of just compensation for the property taken if demand therefor is made within the time fixed in the rule. And where the demand is seasonably made, its denial constitutes error unless, due to the character, location, or quantity of the property to be condemned, or some other reason in the interest of justice, the court in the appropriate exercise of its sound judicial discretion appoints a commission. United States v. Theimer, 10 Cir., 199 F.2d 501. But in the exceptional case where extraordinary circumstances or conditions exist with respect to the character, location, or quantity of the property to be condemned, or for other reason in the interest of justice, the court may in its discretion appoint a commission to determine the issue of just compensation. United States v. Wallace, 10 Cir., 201 F.2d 65."

In United States v. 2,477.79 Acres of Land, etc. (5 Cir. 1958), 259 F.2d 23, the court at page 26 said:

"In order to justify the appointment of commissioners and the refusal of a demand for a jury to try the issue of compensation some exceptional circumstances must exist. The recent consideration of this question by this Court makes it unnecessary that there be any extended discussion of it in this case. United States v. Buhler, 5 Cir., 1958, 254 F. 2d 876. The discretion to appoint commissioners may be exercised 'because of the character, location, or quantity of the property to be condemned, or for other reasons in the interests of justice.' Although the record before us is pretty well limited to the portion of the proceed-

ings affecting the Bowles lands, it is shown that, at the time of the jury demand, the suit involved sixteen separate tracts and eight or more separate ownerships. On two of the tracts the Government had purchase options. Of the other parcels, eight were taken for the reservoir project and six for the expansion of Fort Hood. Most, perhaps all, of the tracts acquired for the extension of Fort Hood were, like the Bowles property, changed into lakefront property by the building of the reservoir. The order appointing commissioners covered, not only the Bowles land, but all of the tracts for which compensation was to be determined. On the record before us we cannot say that there was an abuse of discretion in the appointment of commissioners. The Government urges that the trial court should have made factual findings upon which it based its determination to appoint commissioners. The rule does not so require and, desirable as it may be that such a recital of findings be made, failure to do so is not error."

In United States v. Cunningham (4 Cir. 1957), 246 F.2d 330, the court at page 332 said:

"It is true that the rule prescribes 'trial by jury as the usual and customary procedure to be followed, if demanded * * * and as authorizing reference to commissioners only in cases wherein the judge, in the exercise of a sound discretion based upon reasons appearing in the case, finds that the interests of justice so require'. Report Judicial Conference of United States March 1952, pp. 8 and 9. The trial judge found here that the interests of justice required the appointment of the commission and this finding was made upon reasons appearing in the case and set forth in his order of appointment. There can be no question but that they were adequate. The quantity of the land, its availability for beach residential develop-

ment, the elements of value presented by its availability for hunting and sport fishing, the question as to whether the discovery of ilmenite added to its value, the importance of its being carefully gone over by those who were to value it and the impracticability of having a jury do this in view of its distance from the place where the nearest federal court was held,—all these things taken together certainly justified the appointment of a commission, which would not only serve the convenience of parties and witnesses and make a personal examination of the premises, but which, composed as it was of a distinguished lawyer and two experienced real estate dealers, would bring to the difficult questions of valuation presented an expertness which could not be expected of a jury. Certainly the appointment of the commission could not be held an abuse of discretion. United States v. Wallace, 10 Cir., 201 F.2d 65; United States v. Waymire, 10 Cir., 202 F.2d 550; United States v. Chamberlain Wholesale Grocery Co., 8 Cir., 226 F.2d 492."

In the case of United States v. Chamberlain Wholesale Grocery Co. (8 Cir. 1955), 226 F.2d 492, the court at page 498 said:

"There can be no doubt that when the committee 'earnestly' recommended 'the rule as now drafted for promulgation by the Court, in the public interest', it intended a broad discretion to be vested in the District Court to choose between the use of juries or of commissioners in the condemnation cases brought before them. We think the rule as it stands does vest such discretion in the District Court and in the present cases we find no abuse of discretion by the District Judge in denying the government's demand for jury trial and directing the use of commissioners to fix compensation. The showing made by each of the landowners and the findings thereon of the court af-

forded sufficient basis for the Court's orders. We are in accord with the decisions of the Court of Appeals of the Tenth Circuit in United States v. Waymire, 202 F.2d 550, and United States v. Wallace, 201 F.2d 65. We do not find the conclusion arrived at in United States v. Theimer, 199 F. 2d 501, controlling here."

See, also, United States v. Buhler (5 Cir. 1958), 254 F.2d 876.

■ This court has had many years' experience in the trial of eminent domain cases, and is convinced that in projects, such as the Dardanelle Dam and Reservoir Project, commissioners should be appointed "in the interest of justice," and the facts set forth in the various orders appointing the commissioners in this project demand that the court, in the exercise of its discretion, appoint Commissioners.

Therefore the amendment to the exceptions is without merit.