### UNITED STATES v. ALCORN et al.
### No. 7945.

Circuit Court of Appeals, Ninth Circuit.
Dec. 6, 1935.

Rehearing Denied Jan. 13, 1936.

488

Carl C. Donaugh, U. S. Atty., of Portland, Or., and J. W. McCulloch, Sp. Asst. to the Atty. Gen., for the United States.

Dorothy M. Lee and John F. Cahalin, both of Portland, Or., for appellees.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

The government appeals from a judgment of condemnation on the ground that the award of damages ($5,750) is excessive owing to certain rulings of the trial court favorable to the defendants upon the introduction of evidence and the instructions.

The land in question (8.96 acres) is desired by the government for a railroad right of way for a railroad whose existing right of way and tracks are to be flooded by the waters impounded by the Bonneville Dam across the Columbia river flowing along the boundary between the state of Washington and the state of Oregon. Proceedings for condemnation were instituted by the filing of a complaint on October 2, 1934. The purpose of the government to proceed with the project involving an expenditure of from thirty-one to fifty million dollars was announced in September 1933. The defendants' property at once increased in value from a nominal figure of not to exceed $100 per acre to a speculative value variously estimated at $11,729, $19,000, and $25,000, with damages to the four acres not taken estimated at $2,400, and $6,000 by the defendants' witnesses and at $1,500, $800 and $1,795 with damages to the balance estimated at $400 and $120 by the government's witnesses. The jury fixed the amount of recovery at $5,750 without segregating the amount for the land taken from the amount awarded as damages to the land retained by the defendants. The government contends that the increase in value of the property due to the announcement of the Bonneville project should be deducted from the amount of the award, and that the rulings and instructions of the court to the jury, and the rejection of the government's evidence and instructions on that subject were erroneous. It was conceded at the trial that the value of the property on October 2, 1934, plus the amount of damages to the land not taken was the amount to which the defendants were entitled subject to a deduction of any special and direct benefits to the remainder arising from the improvement. 33 U.S.C.A. § 595. It was held by the trial court that the improvement in question was the whole Bonneville project, and not merely the railroad for which the property of defendants was to be taken. This ruling is not questioned. Hence the question presented for our consideration is whether or not the addition to the market value of the property by reason of its speculative value arising from its proximity to so great a project is a "special and direct benefit" within the meaning of 33 U.S.C.A. § 595. The government's claim is best stated in the words of the brief filed on its behalf:

"Special benefits are such as are enjoyed by one, or a limited number of persons, and not enjoyed by the public generally. Such special benefit usually arises from the location of the property and the peculiar advantages enjoyed by the owner. The evidence in this case shows that the Alcorn property prior to the announcement of the Bonneville project was steep, hillside property in its natural state, covered with timber and brush, 42 miles from Portland, and not near any other town or settlement. There is no evidence that it had any value, or that there was a demand for it for any use or purpose before the announcement of the Bonneville project.

"Immediately after the announcement of the project, and because of the project, its value was $6,000 per acre, or $3,000 per acre, or $1,500 per acre, according to the testimony of the different witnesses. The increased value, and great demand for it, was by reason of its peculiar location, being within one-quarter mile of a project on which the government was spending millions of dollars, and which would cause industrial development which would require the Alcorn property for residence purposes, business purposes and industrial sites. Private property available for such purposes was very restricted and only a few places could be had for such purposes, and a great deal of property would be needed for business, residences and industrial sites. If valueless property before the announcement of the project became worth thousands of dollars per acre after the announcement of the project, and

if such increase was caused by the project, then who will contend that such property was not specially benefited by the public improvement?"

No evidence was offered by the government as to the amount of benefits to be derived by the piece of land (about 4 acres) retained by the defendants. The reason for this defect in proof is obvious. The government's witnesses fixed a value for the land taken on October 2, 1934, which in large measure ignored the increase in value due to the project as fixed by defendants' witnesses. Hence it was altogether illogical to offer proof that large benefits resulted to the land (4 acres) not taken, which its witnesses did not value in excess of $800, after full consideration of the benefits it had received by reason of the contemplated improvement. By reason of this peculiar condition of the record, the defendants claim that the point argued by the government on this appeal is not properly presented by the rulings of the court. We are satisfied that the increase of value to the defendants' property due to its proximity to the great project, while different from that enjoyed by owners of more remote land, is not a special or direct benefit to the land not taken within the meaning of the applicable statute fixing the measure of just compensation to be awarded for land taken by condemnation by the government of the United States for river and harbor improvements. 33 U.S.C.A. § 595, supra. The government points out no special benefit to the remaining four acres and offered no proof upon it, hence, we content ourselves with a reference to the decision of the Supreme Court in U. S. v. River Rouge Imp. Co., 269 U.S. 411, 415, 46 S.Ct. 144, 70 L.Ed. 339, in which the difference between general and special benefits from a public improvement is pointed out.

The government claims that section 37-102 of the Oregon Code applies to this condemnation proceedings brought by the government to condemn land in the state of Oregon. That section is as follows: "No appropriation of private property shall be made until compensation be made therefor to the owner thereof, irrespective of any increased value thereof, by reason of the proposed improvement." It is sufficient answer to this contention to point out that Congress and not the Legislature of Oregon determines the amount of compensation to be paid by the United States for property it takes, subject to the requirement of the Constitution (Amend. 5) of the United States that such compensation be just. Such taking is an exercise of federal power, not to be restricted by the state. Furthermore, if it were otherwise, the law of Oregon as construed by the Supreme Court of that state in Portland R. Co. v. Ladd Estate Co., 79 Or. 517, 155 P. 1192, and in Portland-Oregon City R. Co. v. Penney, 81 Or. 81, 158 P. 404, is substantially the same as the law of the United States now under consideration (33 U.S.C.A. § 595).

The government complains that the trial court allowed the defendants to prove the rental value of land similarly situated as some evidence of the value of the land taken. The assignment of error relied upon does not raise the question, as it contains neither the government's objection nor exception nor the ruling of the court. Goldstein v. U. S. (C.C.A.9) 73 F.(2d) 804. Rule 11. Appellant's brief does not call our attention to any part of the record where the question is squarely raised. Under carefully guarded instructions, the court left to the jury the question as to whether or not such evidence of rental value was to be considered by them as evidence of the market value of the property taken.

We decline to consider the competency of such evidence in the absence of an appropriate assignment raising that question.

What we have said disposes of the other assignments of error, particularly those relating to the instructions requested by the appellant, which were applicable only in case there was evidence as to special benefits to the land remaining.

A motion was made to strike out the bill of exceptions upon the ground that the bill did not show that the proposed bill was filed in time or that the bill was settled during the term. The bill recites that it "was duly presented within the time fixed by law and the orders of this court seasonably made." This is sufficient. There is nothing in the decision of United States v. Payne (C.C.A.) 72 F.(2d) 593, to the contrary. It is not necessary to set out in the bill orders continuing the term or extending the time for filing the proposed bill where the matter is covered by a general statement in the bill as in this case. We have so held in a number of recent de-

cisions. Welch v. St. Helens Petroleum Co., Ltd. (C.C.A.) 78 F.(2d) 631; United States v. Paul, and four other cases (C.C.A.) 76 F.(2d) 132. Motion denied.

Judgment affirmed.