UNITED STATES of America,
Appellant,

v.

2,477.79 ACRES OF LAND, MORE OR LESS, SITUATE IN BELL COUNTY, TEXAS, and Tom G. Bowles, Jr., et al., Appellees.

No. 16980.

United States Court of Appeals
Fifth Circuit.

Aug. 29, 1958.

**24**

Elizabeth Dudley, Roger P. Marquis, Attys. Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., John W. McDonald, Asst. U. S. Atty., Land Acquisition Sec., Waco, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellant.

Wilford W. Naman, Naman, Howell & Smith, Waco, Tex., for appellees.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The United States instituted a proceeding for the condemnation of sixteen parcels of land aggregating 2,477.79 acres, situate in Bell County, Texas. Several of these tracts were to be used for the establishment of Belton Dam and Reservoir in the Brazos River Basin. The other tracts were to be used for the expansion of Fort Hood. Three tracts taken in the condemnation were owned by Tom G. Bowles, Jr. The general layout of the Bowles land is shown by the following sketch:

Tract 805, containing 469.48 acres, was taken for the Fort Hood expansion. Tract B–113–1, of 145.5 acres, and Tract B–113–2, containing 8.70 acres, were taken for the dam and reservoir project. Only these three parcels are involved in this appeal.

The United States made a demand for a jury trial of the issue of just compensation. The court entered an order reciting its conclusion that, "because of the character, location and quantity of the land" and because "it would be in the interest of justice", the compensation to

be paid should be determined by a commission of three persons as provided by Rule 71A, Federal Rules of Civil Procedure, 28 U.S.C.A.[1] By the order commissioners were appointed. The United States excepted to the order. The exception was overruled, and one of the specifications of error is predicated upon this ruling.

The court gave instructions to the commissioners, including one which is set forth in the margin,[2] regarding damages to land not taken and the offset of enhancement of value to the remainder of the land against such damage. A request was made by Bowles that the commissioners be instructed that the location of Tract 805 as lakefront property could be considered in determining its value. The motion was overruled. The Government did not object to any of the instructions given or make any request for additional instructions.

Prior to and at the time of taking the land was useful for farming and ranching. It was a rolling and hilly tract. Most of it was cleared. There was some timber land. A small area was in cultivation. Before the commission it was stated by counsel for Bowles that "this was just raw land, undeveloped, and not used for any purpose than agricultural purposes." The building of the dam gave to Tract 805 a substantial water frontage, a mile more or less, along the newly created lake. The land sloped back from the lake so that there was a view of the water from nearly all of the tract. Without the lake the value of the land would be determined by its use for ranching and agricultural purposes.

There was a considerable divergence of opinion among the experts who testified as to values. The witness Ray, testifying for Bowles, placed a value on Tracts B–113–1 and B–113–2 of $125.00 per acre as agricultural lands, or $19,275. But

1. "If the action involves the exercise of power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court." Rule 71A(h), Fed.Rules Civ. Proc.

2. "In some instances, there will be taken, or has been taken, only a part of a tract of land leaving a part of the tract not taken. In cases of this kind, it will be your duty, not only to find the fair cash market value of the land taken as of the date of the taking, but you must also find the amount of damages, if any, occasioned to the remaining part of the land not taken by reason of the Government having taken a part of the tract, i. e. if the Government takes only a part of a tract of land, the question confronting you would be: Would the value of the remaining part of the land be diminished by reason of the Government having taken only a part of said land? If the value of the remaining part in your judgment has been diminished, you should find the amount of the damages to the remaining portion. In this connection you will also take into consideration the enhancement of value, if any, of the remaining portion by reason of its location and by reason of the project and if you find that such remaining portion of the land has been enhanced in value, such enhancement will be considered in arriving at the damages to such remaining portion. The damages, if any, suffered to a part of a tract not taken by reason of the Government having taken only a part of a tract should be determined as of the date the part of the tract was taken."

for the lake he would have placed a like valuation on all but ninety acres of uncleared land and this he would have appraised at $50 per acre. His aggregate of the values of Tract 805 without the lake was $51,935. Giving effect to the presence of the lake, Ray valued Tract 805 at $500 per acre, or approximately $235,000. The witness Lanham, also called on behalf of Bowles, valued Tract 805, with the lake, at $120,000. Had there been no lake he would have valued Tract 805 at $50,000. The appraiser for the Government testified that, in his opinion, the presence of the lake made thirty-two acres of Tract 805 available for subdivision purposes and this area he thought was worth $225 per acre. Without the lake he would have placed a $60 per acre value on the thirty-two acres. His aggregate value of Tract 805, giving effect to the presence of the lake, was $32,160.80, and without the lake it would have been $26,880.80. He valued Tracts B–113–1 and B–113–2 at $100 per acre for 46.4 acres of crop land and $60 per acre for the rest, making a total value of $10,708 [3] for the two parcels.

The commissioners reported to the court:

> "The cash market value of Tract Nos. B–113–1 and B–113–2, consisting of 154.2 acres, on the date of taking for the Belton Dam and Reservoir Project was ....... $15,420.00
> "The cash market value of Tract No. 805, consisting of 469.48 acres, on the date of taking for the Ft. Hood Project was .......... $94,253.20."

No other findings were made. The United States objected to the report upon the ground, among others, that it did not contain sufficient findings of fact and conclusions of law upon which to base a judgment. The Government moved that the commissioners be required to make the following additional findings:

> "The amount of increment, if any, to Tract No. 805, consisting of 469.48 acres, derived from and by virtue of the construction and operation [of] Belton Dam and Reservoir Project, for which Tracts Nos. B–113–1 [and] B–113–2 were taken.
> "If the benefit of Tract No. 805, if any, was a result of the construction and operation of Belton Dam and Reservoir Project.
> "What the highest and best use was of the 623.68 acres on the date of taking and immediately prior thereto.
> "What the highest and best use was of Tracts Nos. B–113–1 and B–113–2 at the date of taking for Belton Dam and Reservoir Project.
> "What the highest and best use was of Tract No. 805 at the date of taking."

The court entered judgment for the amounts set forth in the report of the commissioners. By the judgment the exceptions to the order appointing commissioners, the objections to the report of the commissioners, and the motion for additional findings were each overruled. The Government appealed.

▆▆▆ In order to justify the appointment of commissioners and the refusal of a demand for a jury to try the issue of compensation some exceptional circumstance must exist. The recent consideration of this question by this Court makes it unnecessary that there be any extended discussion of it in this case. United States v. Buhler, 5 Cir., 1958, 254 F.2d 876. The discretion to appoint commissioners may be exercised "because of the character, location, or quantity of the property to be condemned, or for other reasons in the interests of justice." Although the record before us is pretty well limited to the portion of the proceedings affecting the Bowles lands, it is shown

3. Our reckoning gives a total of $11,708.-00. We are unable to reconcile some of the other computations made by the Government's expert but the differences are not large enough to be material.

that, at the time of the jury demand, the suit involved sixteen separate tracts and eight or more separate ownerships. On two of the tracts the Government had purchase options. Of the other parcels, eight were taken for the reservoir project and six for the expansion of Fort Hood. Most, perhaps all, of the tracts acquired for the extension of Fort Hood were, like the Bowles property, changed into lakefront property by the building of the reservoir. The order appointing commissioners covered, not only the Bowles land, but all of the tracts for which compensation was to be determined. On the record before us we cannot say that there was an abuse of discretion in the appointment of commissioners. The Government urges that the trial court should have made factual findings upon which it based its determination to appoint commissioners. The rule does not so require and, desirable as it may be that such a recital of findings be made, failure to do so is not error.

The United States asserts that the trial court erred in entering judgment for the amounts fixed by the commissioners for the tracts taken for the reservoir and for the tract taken for the expansion of Fort Hood without reducing the award for the reservoir tracts to the extent that the reservoir had increased the value of the Fort Hood tract. The landowner, Bowles, insists that no right of offset exists and this, he says, is so for more than one good reason. First, it is contended that the contour line of the reservoir had been established and the dam had been completed before the proceedings in condemnation were commenced and these factors, not the taking of Tracts B–113–1 and B–113–2, enhanced the value of Tract 805. The argument seems fallacious. It is the creation of the improvement and not the incident of the taking to which we look in determining whether there has been a benefit to neighboring land that is to be reckoned as a factor in measuring just compensation. The three Bowles tracts were taken at the same time but for different purposes and by virtue of different statutory authorizations. The rights of the landowner should be no greater and no less, and the obligations of the Government should neither be lessened nor increased because a single declaration of taking was filed and a single action brought to determine compensation than would have resulted if the two projects had been made the subjects of separate judicial proceedings. If, by reason of the creation of the reservoir or lake the value of Tract 805 which then became lakefront property instead of agricultural or ranching property, was thereby increased, such right as there might otherwise be to set off the benefit so resulting against the compensation for the two tracts taken for the reservoir would not be affected by the inclusion in a single proceeding of the land taken for the two projects.

 Tracts B–113–1 and B–113–2 were taken for a flood control project. The compensation payable for these tracts should not include any increase or enhancement of value which results from the project for which they were taken. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162; United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240; Id., 350 U.S. 956, 76 S.Ct. 346, 100 L.Ed. 832, rehearing denied 350 U.S. 1009, 76 S.Ct. 648, 100 L.Ed. 871. This rule is recognized by Bowles and he makes no claim that the compensation for the two reservoir tracts should be measured otherwise than by its value for farming and ranching purposes. The Congress has provided that in takings such as that here involved, where only a part of a parcel of land is taken, special and direct benefits to the remainder arising from the improvement shall be taken into consideration in fixing the award for the part taken. 33 U.S.C.A. § 595. The three tracts involved in this proceeding were, prior to the taking, and should be regarded, for the purpose of fixing compensation for Tracts B–113–1 and B–113–2, as

a single parcel. United States v. Miller, supra. The reduction or offset is only with respect to special benefits accruing to the remaining land and no deduction will be made for general benefits. Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; McCoy v. Union Elevated Railroad Co., 247 U.S. 354, 38 S.Ct. 504, 62 L.Ed. 1156; United States v. River Rouge Improvement Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; United States v. Alcorn, 9 Cir., 1935, 80 F.2d 487. No disagreement exists between the parties as to the correctness of this rule but there is a wide difference between them as to how it applies to the particular facts of this case.

■ General and special benefits have been thus distinguished:

"The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Ordinarily the foregoing test is a satisfactory one, though sometimes difficult to apply. In other words, the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways." 3 Nichols on Eminent Domain, 3d Ed., 45, § 8.6203.

It has been held that special benefits are to be differentiated from general benefits where the differences are in kind and not in degree. United States v. Alcorn, supra. It is urged on behalf of Bowles that the reservoir project enhanced values in the entire area, not only of the lands immediately adjacent to the reservoir but in varying degrees to land substantially removed. In the Alcorn case the project was the construction of the Bonneville Dam on the Columbia River. The property of the landowner Alcorn was distant about a quarter mile from the reservoir. A portion of his land was acquired as a right-of-way for railroad trackage that had to be moved from the reservoir site. The construction of the dam and reservoir increased the values of Alcorn's land from a nominal figure to amounts appraised at varying figures up to $25,000. Land values in the area of the Bonneville project had been greatly increased by it, with the percentage of enhancement diminishing as the distances from the project became greater. It was held that while the increase in value of Alcorn's property was different from that enjoyed by owners of property more remote from the project, the benefit to the land was not special or direct within the meaning of the statute. The rule announced in the Alcorn case has not been universally applied. See the annotation in 145 A.L.R. 7. We think that special benefits are those which are direct and peculiar to the particular property as distinguished from the incidental benefits enjoyed to a greater or less extent by the lands in the area of the improvement. A special benefit is nonetheless such because other lands in like situations are similarly benefited.

■ The Government's appraiser testified that the only part of Tract 805 made available for subdivision purposes was about thirty-two acres along the newly constructed lake. The expert witnesses who testified for Bowles were of the opinion that the slopes and grades of the tract were such that a view of the lake could be had from nearly all places in the tract, from which it might be inferred that there was a direct enhancement in the value of nearly all of the tract as a result of the immediate relationship of lake to property. The extent of the special benefit to Tract 805 by the reservoir project is a fact question. It is a question which was not determined by the trial court. It is not a question which we may initially consider. None of the land of Bowles, before the dam

was built, was waterfront property. Afterward, and by reason of the project, Tract 805 became, in whole or in part, waterfront property and riparian rights attached. Such benefits as may have resulted by reason of the change in character from upland property to riparian property were special and direct benefits and as such were within the meaning of the statute. United States v. River Rouge Improvement Co. supra. If there has been a special benefit to the Bowles tract, or to a part of it, as waterfront property, and a general benefit as well by reason of the property being in the area of the improvement the amount of the offset would be limited to that part of the increase attributable to the special benefit. Whether, in making the award for Tracts B–113–1 and B–113–2 any consideration was given to direct benefits to Tract 805 cannot be ascertained from the record but it seems improbable that such was done.

 We find ourselves in agreement with the Government's position that the findings of the commissioners are wholly inadequate and that the judgment must be vacated and the cause remanded for proper findings and a judgment based thereon. From the report, so styled, of the commissioners nothing appears except a recital of their appointment, a statement that a hearing was had, and the commissioners' conclusions as to values. As examples of the deficiencies in the findings it may be noted that nothing is found as to how the commissioners resolved the conflicts in the testimony, no findings appear as to the uses of the land, particularly Tract 805, and no determination is made as to benefits. Without explicit findings the trial court cannot adopt or reject the findings or adopt some and reject others. Without adequate findings this Court does not have before it a record which permits of a review of the district court's adjudication. United States v. Buhler, supra; United States v. Cunningham, 4 Cir., 1957, 246 F.2d 330.

In referring the case back to the commissioners, leave to take further testimony may be desirable, further instructions with respect to deductions for benefits will be necessary, and specific findings should be reported by the commissioners. If, for any proper reason, the commissioners appointed cannot or should not again serve, others may be appointed and a hearing de novo may be had. It is here intended, as in United States v. Buhler, supra, that the trial court shall exercise the widest possible discretion, and, as in United States v. Buhler, the parties may make use of, by reference, the record now before us in the event of another appeal.

For further proceedings in accordance with this opinion the judgment is

Reversed and remanded.