**UNITED STATES of America,**
**Appellant,**

v.

**TAMPA BAY GARDEN APARTMENTS,**
**INC. and Tampa Bay Manor, Inc.**
**et al., Appellees.**

**No. 18446.**

United States Court of Appeals
Fifth Circuit.

Sept. 1, 1961.

See also D.C., 161 F.Supp. 424.

Roger P. Marquis, Atty., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., Robert F. Nunez, Asst. U. S. Atty., Tampa, Fla., Ramsey Clark and Perry W. Morton, Asst. Attys. Gen., E. Coleman Madsen, U. S. Atty., Miami, Fla., Robert M. McKee, Atty., Dept. of Justice, Washington, D. C., for appellant.

Chester H. Ferguson, John M. Allison, David C. G. Kerr, Wm. Terrell Hodges, Tampa, Fla., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., of counsel, for appellees.

Before JONES and BROWN, Circuit Judges, and CONNALLY, District Judge.

JONES, Circuit Judge.

The United States brings this appeal from the district court's judgment entered upon an award made by three Commissioners appointed to determine the issue of just compensation in the condemnation and taking by the Government of interests in two housing projects constructed by the corporate appellees within the federal enclave of MacDill Air Force Base at Tampa, Florida, pursuant to Act of Congress of August 8, 1949, 63 Stat. 570, 12 U.S.C.A. § 1748 et seq., known as the Wherry Act. The land on which the projects were built belonged to the United States, but had been leased to the corporate appellees for a term of 75 years, and the leases had approximately 67 years remaining at the time of the Government's declaration of taking in January 1958. It was stipulated by the parties at a pre-trial conference that the corporate appellees would be considered as one and that the award of just compensation would be made in a lump sum without allocation between them. Consequently, the appellees are here treated as a single entity.

The Government instituted this condemnation proceeding pursuant to the authority given to it by 42 U.S.C.A. § 1594a, as amended July 12, 1957, Public Law 85–104, Title V, § 504, 71 Stat. 303. The Government requested trial of the issue of just compensation by a jury, but it was referred to Commissioners appointed by the court pursuant to 42 U.S. C.A. § 1594a(c) (1) and Rule 71A(h), Fed.Rules Civ.Proc., 28 U.S.C.A. In its pre-trial order, which was later incorporated into the order appointing a commission, the district court provided:

"The admissibility or exclusion of evidence shall be determined by the Chairman of the Commission, subject to review by this court in the manner specified in such order of appointment. The court hereby determines, however, that either party shall be permitted to introduce into evidence testimony by qualified experts based on any of the recognized methods of appraisal, which are:

"(a) Comparable sales, if any,

"(b) The capitalization of income method of appraisal,

"(c) Reproduction or replacement cost, with appropriate adjustment for depreciation; and

"(d) Any other factors relevant and material to issues of just compensation."

The Commission heard testimony presented by expert witnesses for both the Government and the appellees as to the value of the interests taken. The evidence showed that the property consisted of 129 residential buildings, 22 buildings containing garages and storage cubicles, 18 laundry buildings, telephone substations and administrative and maintenance buildings, all of concrete-block construction. Each residential unit was furnished with electrical appliances, an oil-fired space heater and venetian blinds, and other furniture and fixtures were available by rental to the occupant of each unit. Improvements, consisting of streets, sidewalks, curbs, gutters, water and light distribution systems, sewage facilities and landscaping had been added to the projects. The Commission found that all of the property was in sound condition as of the date of taking and that any termite damage, reportedly existing in several of the buildings, was inconsequential at the time of taking.

It was shown that the remaining balance on the principal of the mortgages executed by the appellees against the projects totaled $5,989,304 at the time of taking, bearing interest at 4 per cent. per annum. Under the terms of the mortgages the debtor was required to make a payment of $368,115 each year which would discharge the debt and interest in approximately 27 years from the date of taking. The mortgage agreement also required that the debtor pay an insurance premium of $30,053 each year.

It was determined by the Commission that the net income that might be derived from rentals was limited by the lease agreements and conditions, and that a schedule of rents for designated and non-designated military and civilian personnel had been approved and fixed by the Federal Housing Administration. The Commission concluded that, "based upon a careful consideration and analysis of the testimony of these expert witnesses for both parties, and upon a consideration of all the evidence and testimony in this case, * * * the annual stabilized net income from the leasehold, before provision for payment of the mortgage principal, interest and insurance, and before provision for amortization of investment in equity," was approximately $540,000 per annum, and that the leasehold had a period of utilization of slightly more than forty years.

With respect to the furniture and fixtures, it was determined that these resulted in a better utilization of the leasehold, and they were regarded as a short-lived facility, and consideration was given to their effect on the gross income from the projects and to the financial burden of necessary replacements.

The Commission relied primarily upon the capitalization of income method of appraisal, since it had found there were no other sales of Wherry housing projects upon which it could base its evaluation of the projects in the case before it. The Government had presented evidence regarding the sales of three other Wherry projects, but the Commission refused to consider them as a separate method of appraisal, holding that these sales were too remote in time and the properties were not sufficiently comparable to the leasehold here involved. Other than pointing out the factors already mentioned and saying that, "the expert witnesses for both parties have widely separated opinions as to the depreciated replacement value of the improvements to the leasehold," and that it "carefully and at length considered every aspect of this case as reflected in the testimony and evidence submitted," the Commission did not indicate any reliance upon any method of appraisal except the capitalization of income method. Basing its judgment on conclusions drawn from the testimony given by all the expert witnesses, the Commission found that the investor would be required to receive an annual return of 2.5 per cent. on his investment in order to return his investment in forty years, and that, because of "the hazards and uncertainties surrounding the leasehold income, and the fact that the rate would not be the same each year, but less in the first 27 years and greater in the remaining 13 years," the investor would expect as the fair income return on investment in equity an average annual rate of 10.5 per cent. Thus, in order to return the investment in forty years and receive a fair income from the investment, a total average annual rate of 13 per cent. was required. By capitalizing at this rate the balance of the income, after deductions for the payment of principal and interest on the mortgages and for insurance, for forty years, the Commission concluded that a fair market value of the interest taken was $2,100,000 and an award of that amount was made.

Upon the filing of the Commission's report with the court, the Government filed its objections and exceptions. The court reviewed all of the evidence in the cause. In addition to holding that the Commission's findings were supported, the court elaborated upon the evidence and in its findings of fact stated its reasons for sustaining the award. Among other things, the court stated that at the time of taking there were no vacancies in the projects, and that while the appellees were required by the lease agreements to give preference in renting to designated military and military-connected civilian personnel at rent schedules approved by the Federal Housing Administration, the units, when not required for such personnel, could be rented to non-designated tenants at the higher Tampa area market rents. Due to the scarcity of housing in the Tampa area and the location of the projects, even if

none of the units were rented to designated military personnel, all could be readily rented to others at higher rents. As a result, the court found that the projects were distinguishable from those located on remote military reservations which were wholly dependent upon military personnel as tenants.

With respect to taxes, the extent of the Commission's consideration of this matter is shown by its statement that it, "carefully and at length considered every aspect of this case as reflected in the testimony and evidence submitted." The court commented on the matter of taxation and noted that the leasehold interests were exempt from taxation by the State of Florida or any governmental unit thereof under the controlling precedents of Park-N-Shop, Inc. v. Sparkman, Fla.1957, 99 So.2d 571; Patrick Gardens, Inc. v. Nash, Fla.1958, 100 So.2d 626.

The court adopted as proper the Commissioner's rejection of the comparable sales method of appraisal and agreed with the Commissioners that the other sales of Wherry projects introduced by the Government were too remote as to time and the properties were not comparable to the projects here involved. In addition to repeating the substance of that which the Commissioners has said, the court stated that the other sales of Wherry projects involved the sale of corporate stock and not the sale of the leasehold properties themselves, as was the case here. The court observed that, with one exception, all of the expert witnesses had considered in one way or another the reproduction cost less depreciation method of appraisal in evaluating the projects. The court was of the opinion that consideration of this method was entirely proper, although it found that the Commission gave little weight to this approach, and the court said that it did likewise.

The court concludes its findings of fact by saying that all the witnesses for both parties utilized the capitalization of income approach to value, and that the Commission's use of this method of appraisal in connection with all the testimony and evidence presented resulted in a fair, just and reasonable award. The court held that the Commission's determination of $540,000 as the stabilized annual net income of the projects was proper and within the range of estimates given by all the expert witnesses. The determination of forty years as the useful economic life of the projects remaining after the date of taking was justified by the evidence presented. The court then found that when the Commission determined the total net income for the forty-year period and reduced this amount by the sum needed to pay the principal and interest on the mortgages and the insurance, a capitalization of the balance at a rate of 2.5 per cent. per annum was required for a return of capital during said period. After a deduction of this amount was made, there was a sum sufficient to pay the investor an income return on the investment of approximately 10.5 per cent. per annum. The court said that this was a proper conclusion for the Commission to make, and that based upon it, the award of $2,100,000 was fair and just.

The court supported its confirmation of the Commission's award by comparing it with the figures arrived at by the court in applying the frequently used Inwood Coefficient method of appraisal, a method recognized by the American Institute of Real Estate Appraisers. The court took the stabilized annual income of $540,000 and the remaining economic life of forty years, both as found by the Commission and concurred in by the court, selected a capitalization rate of 6 per cent. which it considered fair and within the range of estimates made by the expert witnesses, and to these figures the court applied the Inwood factor of 15.046. By multiplying the stabilized annual income by the Inwood factor and then subtracting from this amount the mortgage debt as of the date of taking, the final sum was approximately the same result as that awarded by the Commission.

The court overruled all the Government's objections and exceptions to the

Commission's report, holding that it was within the discretion of the Commission to determine the credibility of the witnesses and the weight to be given their testimony, and that the court would not be justified in reweighing the evidence in a de novo review or in reversing the Commission because its valuation of the interests taken was closer to the expressed opinions of the appellees' witnesses than to those of the Government's witnesses. The court said that the award was, "clearly within the range of the credible evidence," and was the fair market value and just compensation for the interests taken. The court adopted and confirmed the report of the Commission and in its final judgment in condemnation the court ordered the Government to pay the appellees $2,100,000 plus interest.

The Government, in its efforts to overturn the award, alleges here several errors on the part of the Commission and the district court, including the use of fallacious computations unsupported by substantial evidence, the failure to consider the sales of other Wherry leaseholds, the utilization of the reproduction cost less depreciation method of evaluation, the inadequacy of the Commission's report with respect to several of the factors involved in determining just compensation and the impropriety of the district court in attempting to compensate for the deficiencies in the Commission's report by making independent findings.

The Government states, as one of its specifications of error, that "The findings by the Commission are inadequate but the district court erred in attempting to cure the deficiencies by supplying findings especially since those findings would have been clearly erroneous if made by the Commission." The United States asserts that the Commissioners must make all of the findings and that the district court cannot supply findings with respect to facts not covered by the Commission's report. To support this position reliance is placed upon the opinion of this Court in United States v. 2,477.79 Acres of

Land, 5 Cir., 1958, 259 F.2d 23. But that case is not this case. There the so-called findings contained only a recital of the appointment of the Commissioners, a statement that a hearing was had, and the conclusions of the Commissioners as to value. The district court entered judgment for the amount found as value by the Commission. No findings were made by the Court. There we said, "Without explicit findings the trial court cannot adopt or reject the findings or adopt some and reject others. Without adequate findings this Court does not have before it a record which permits a review of the district court's adjudication." 259 F.2d 23, 29.

Although the Commission's findings of fact must be accepted by the district court unless they are clearly erroneous under Rule 53(e) (II) Fed.Rules Civ.Proc., 28 U.S.C.A., which was incorporated into Rule 71A, the district court is authorized by the Rule to modify or reject the Commission's findings in whole or in part. We do not think the power to modify is to be narrowly construed or applied. The power to modify is a power to alter or change, and to enlarge and add to as well as to limit, restrict or reduce. The district court could have rejected the Commission's findings had they been clearly erroneous. Had this been done, the district court could have substituted its own findings based upon the evidence before the Commission. United States v. Twin City Power Co., 5 Cir., 1958, 253 F.2d 197. In argument before the district court Government counsel took a different position than is now taken. There it was said, "Our position of course is that the court can either reject or reject in part, or approve or approve in part, he may consider it himself, he may set it aside." We think the district court could properly accept and approve the Commission's findings and modify and supplement them by making further findings from the evidence.

Our review is of the judicial determination made by the district court. We consider the Commission's findings only to see whether the district court

properly accepted and approved them as being not clearly erroneous. We undertake a determination of whether or not the district court's independent supplemental findings are clearly erroneous, and, of course, we attempt to determine whether proper legal standards were applied in resolving the issue of just compensation. Parks v. United States, 5 Cir., 1961, 293 F.2d 482; United States v. Twin City Power Co., supra; Seale v. United States, 5 Cir., 1957, 243 F.2d 145; Slattery v. United States, 5 Cir., 1956, 231 F.2d 37. The findings of the Commission, approved and found to be not clearly erroneous by the district court, as modified and supplemented by the district court, have provided this Court with a record which permits a review of the district court's adjudication.

The United States urges error in that "The district court erred in approving the Commission's refusal to consider the sales of other Wherry leaseholds as indicating the proper rate of capitalization on the ground that they were not comparable." As has been noted, the Court instructed the Commissioners that they should receive evidence of experts on any of the "recognized methods of appraisal" and specified (a) comparable sales, (b) capitalization of income, and (c) reproduction cost less depreciation. Most of the Commission's report, like most of the evidence which had been submitted to it, had to do with the capitalization of income method of appraisal. The Commissioners in making their report referred to and made findings with respect to each of the recognized methods of appraisal. As to comparable sales the report read:

"The expert witnesses for the plaintiff are in disagreement with the expert witnesses for the defendant as to whether or not there exist sales of leaseholds that are comparable to leaseholds that are involved in this case. The defendant's expert witnesses are of the opinion that there are no comparable sales. The expert witnesses for the plaintiff point to three sales. These sales are

remote as to time and in our opinion the properties involved were not sufficiently comparable to the leasehold here involved to be material to this case."

In the argument, which was an extended one, Government counsel then regarded the finding as relating to comparable sales. Government counsel discussed the three recognized methods of appraisal. He first mentioned replacement. He then discussed, or rather mentioned, comparable sales, saying:

"The other was market value. On that I think they recognized that here were comparable sales and there was some issue as to whether the sales were comparable. They made one finding: 'We find that the sales were not comparable.' And that is all we are told."

The court's findings of fact followed the same pattern. It made lengthy findings as to the location of the property, the extent and character of improvements, the demand for rental property in Tampa and distinguished the housing projects here involved from those usually located on military reservations at remote places. Because, as the court made apparent, Government counsel had complained that they were not told more about the rejection of the cited sales as being comparable, the court enlarged upon the Commission's findings. The court's findings contain the following:

"The defendant's expert witnesses, John L. Vaughan, Jr., and Warren P. Hunnicutt, and the Government's expert witnesses, Robert C. Hastings, J. M. Bregar, and William W. Mollan, testified as to the value of the property condemned. The court has reviewed their testimony and finds that the Government witnesses considered three sales of stock in Wherry housing corporations located in the States of Louisiana, Massachusetts and Virginia. The Government has complained that the Commission rejected these as comparable sales. The court finds that because (1) said sales were re-

mote in point of time, (2) because of the arbitrary selection of these three sales by the witnesses, (3) the wholly dissimilar locations of the properties involved, (4) the differences in size, income and construction of improvements, and (5) the sale of corporate stock and not the sale of assets, as was the situation here, the Commission was justified in rejecting these transactions as comparable sales."

The next paragraph of the court's findings dealt with "The second method of appraisal * * * reproduction cost less appropriate depreciation." Following this the court discussed and made findings as to the third method of appraisal, capitalization of income.

We do not think the United States is now contending that the three Wherry sales should have been treated by the Commission as evidence of a value, as a basis for determining just compensation, under the separate and independent comparable sales method of appraisal. If it be so contended, then we do not hesitate to say that it has not been shown that the district court's finding is clearly erroneous.

The witness Hastings, an appraiser for the Government whose testimony covers over two hundred pages of the printed record, was asked if any one of the three sales was comparable to the project here involved and he answered "No, they are sales of comparable investments from which I gleaned my capitalization rate." The Government witness Bregar, another appraiser, said he didn't use them in determining his capitalization rate but "used them as a sort of a check" on his capitalization rate. The Government's third appraiser, the witness Mollan, testified about "the market data" approach but made no reference to the other three Wherry projects and said "I found no sales in this area of similar housing." We do not find that either the Commission or the court excluded consideration of the Wherry project sales as one of the considerable number of factors going into the complicated process of determining

the value of a Wherry Act leasehold interest by the capitalization of income method. The Government's appraisers did so consider the other sales giving varying weights to such data.

■■ The Government urges that there must be a reversal because of error of the district court in approving the receipt in evidence and consideration by the Commission of value based upon reproduction cost less depreciation. We have already referred to the court's pre-trial order authorizing this method of reaching a determination of value. That order was entered on March 26, 1959. The court's judgment was entered on January 12, 1960. It was not until March 25, 1960, that the use of reproduction cost as a basis for valuation of a Wherry leasehold was held improper by the decision of this Court in United States v. Benning Housing Corporation, 5 Cir., 1960, 276 F.2d 248. See also United States v. Leavell & Ponder, 5 Cir., 1961, 286 F.2d 398, certiorari denied 306 U.S. 945, 81 S.Ct. 1674, 6 L.Ed.2d 855; Buena Vista Homes, Inc. v. United States, 10 Cir., 281 F.2d 476. At the pre-trial conference Government counsel, in outlining the factual information upon which the testimony of the Government would be predicated, said that various factors would be considered including "the market data approach, the cost, the reproduction, the capitalization and so on." At the pre-trial hearing the court asked counsel for the appellees if he was insisting that the true test was reproduction cost. Counsel made this reply.

"No sir, we are not going to say that that is the only method. We are saying that a proper appraisal in this case encompasses both the income doctrine, reproduction cost, and economic value. In other words we say that the appraiser * * * should not be narrowed to any particular field but he should explore and assert the tests of all recognized methods of appraisal."

Counsel for the United States interjected "The Government agrees with that," and

repeated, "The Government agrees with that." The court asked Government counsel if reproduction cost less depreciation would be an available theory of appraisal. He stated, "It is a factor."

Government witness Hastings was asked about the several approaches, comparable sales, replacement cost less depreciation, and capitalization of income. He testified, "I have used all three." Again he said, "I have made a replacement cost estimate." Government witness Mollan testified, "The first approach that I considered * * * was the cost approach, and in this approach I estimated the cost of reproduction exclusive of land." He used the cost approach as he used comparable sales, "for checking other findings." Government witness Mollan testified at length and in detail with respect to costs and depreciation. The district court was undoubtedly correct in its finding that the Commission placed little, if any, weight on this appraisal approach, and commented that it likewise gave this approach little or no weight in reaching its conclusion. The recognition by the Government of the reproduction appraisal approach and the use of it by the Government and · its witnesses now precludes the Government from asserting error in the admission of reproduction cost evidence. Stipulations reached and statements made at pre-trial conferences are binding unless modified. At the pre-trial conference the issues may be determined and a pre-trial order may govern as to evidence which is admissible. Even if this were not so, we would be constrained to say that no showing has been made and no facts established from which inferences could be drawn that the Government was in anywise prejudiced by the reproduction cost evidence of the appellees and, of course, the Government does not assert any injury from evidence elicited from its witnesses on this phase of the case.

■ The Government complains that the Commission and the court failed to make explicit findings with respect to a number of questions which it asserts are decisive. The Commission found that there was a dispute as to termite damage and that such damage was inconsequential at the time of taking. The finding is challenged and the Government contends that the Commission committed error in failing to include in its appraisal computation an amount for termite control. The Government asserts that there must be a reversal because the Commission concluded that leasehold furniture should be regarded as a short-lived facility, beneficial to the utilization of the leasehold, and consideration should be given to its effect on the gross income from the leasehold and to the financial burden of necessary replacements. In the consideration of these and other contentions of the Government, we must not forget that the ultimate determination is to be of an amount to be awarded as just compensation to the owner of property taken by the sovereign. The measure of the award is in many, perhaps most, instances based upon opinions. The amounts to which the expert appraisers testify, the amount fixed by jurors or commissioners, and the amount determined by the court are all opinions and, as has been said, an informed guess. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. The judicial determination of the award in a condemnation case cannot be made by mechanical or mathematical processes, nor can the process of adjudication be governed by a fixed formula. United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392. We do not think it is necessary that we require, in testing the district court's judgment by the clearly erroneous doctrine, a specific finding with respect to each of the evidentiary conflicts that appear in the record. Cf. Seale v. United States, 5 Cir., 1957, 243 F.2d 145. We do not believe that the court omitted findings on any essential factual issues so as to prevent this Court from determining whether the result was based upon clearly erroneous findings.

■ The principal approach to value in this case was by the capitalization of income method. It was used by the ex-

pert witnesses, by the Commissioners and by the district court. By this method the estimated net return over the estimated life of the improvements is capitalized at a rate which will provide for the recapture or amortization of the value of or investment in improvements, sometimes termed depreciation, as well as a proper return to the investor. United States' v. Certain Interests in Property, D.C.S.D.Cal.1960, 186 F.Supp. 167; Burritt Mutual Savings Bank of New Britain v. City of New Britain, 20 Conn. Supp. 476, 140 A.2d 324; Chicago, B. & Q. R. Co. v. Department of Revenue, 17 Ill.2d 376, 161 N.E.2d 838; De Luz Homes, Inc. v. San Diego County, 45 Cal. 2d 546, 290 P.2d 544; In re New York Title & Mortgage Co. (Series B–K), Sup., 21 N.Y.S.2d 575. There seemed to be no difference of opinion among the witnesses as to the remaining useful life of the improvements. There were differences as to the factors to be considered in determining the net stabilized income. The Government appraisers reduced their income figure by their estimates of state ad valorem taxes. The appellees' appraisers made no such deductions, and we think were correct in not doing so in view of the tax exempt character of the property under the law of Florida, Park-N-Shop, Inc. v. Sparkman, supra; Patrick Gardens, Inc. v. Nash, supra. There were other differences in the factors as evaluated by the witnesses. The determination of the net income figure is a most important one as a comparatively small difference in the annual income estimate can produce extremely large variations in the capitalized value estimates.

Perhaps the most vital factor in the process of capitalization of income is the determination of the capitalization rate. The determination of this rate is not one that can be ascertained by a reference to current bond yields or F.H.A. mortgage rates. The determination involves the consideration of many factors and the weight to be given to each of them. Here the experience, and the judgment resulting from that experience, of the skilled appraiser comes into play. The varying views of the several experts on all phases of determining value by capitalizing income, their opinions, and their reasons for their opinions, as to the values as fixed by each of them, were fully developed before the Commission and their testimony was before the district court. The findings of the Commission and the district court as to the stabilized net income, the rate of income return, and the capitalized value were within the range of the testimony. The testimony is to be weighed by the trier of the facts, here the Commission, and its determination of value, within the range of the evidence, has been given the approval of the district court. It is entitled to our approval. United States v. Twin City Power Co., supra; Stephens v. United States, 5 Cir., 1956, 235 F.2d 467; Buena Vista Homes, Inc. v. United States, supra; United States v. Smoot Sand & Gravel Corporation, 4 Cir., 1957, 248 F.2d 822. The finding of the value by the Commission and the court is not discredited by the testing of it by the use of the so-called Inwood Coefficient method of valuation. See McMichael, Appraising Manual, 4th Ed., p. 80 et seq.; Schmutz, Condemnation Appraisal Handbook, p. 94 et seq.

The Government is critical of the Commission's method of illustrating its determination of value by the application of a capitalization rate to a stabilized net income figure. The methods used by the experts in arriving at their opinions as to value are not shown to be erroneous and the use of the formula by the Commission to demonstrate its finding is not shown to be erroneous any more than is the use of another by the court to test that determination of value. It is not, as we have pointed out, our function to retry the case de novo, to reconcile the conflicts of evidence, to adopt or reject capitalization theories. These are questions for the district court and the district court has resolved them. There is substantial evidence to sustain the award and it is not within our province to reweigh it. Unless the judgment is clearly erroneous we should affirm it. United

States v. Twin City Power Co., supra; Seale v. United States supra; Buena Vista Homes, Inc. v. United States, supra; Cunningham v. United States, 4 Cir., 1959, 270 F.2d 545, certiorari denied 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed. 2d 1022; United States v. Waymire, 10 Cir., 1953, 202 F.2d 550.

Since the judgment is not being reversed on the merits, it is unnecessary to consider whether the case should have been tried before a jury rather than being submitted to a Commission. United States v. Leavell & Ponder, Inc., supra.

We are unwilling to extend this already lengthy opinion for a discussion of the other questions raised by the Government. They have been considered. In none of them do we find prejudicial error.

The judgment of the district court is Affirmed.