306 F.2d 39
 UNITED STATES of America, Appellant,
v.
Louis T. MERZ, Leo J. Merz, Minard Henderson and Grace Henderson; W. E. Guthrie, Bernice Guthrie and Federal Land Bank of Wichita, Wichita, Kansas; John Kerkoff and Katherine H. Kerkoff; Robert E. Davis and Mamie Davis; E. E. Smith and Pearl T. Smith; Bertha Kinney Rogers, Juanita Kinney Nagel and Wanda Kinney Riggins; Charlie O. Rivers and Myrtle Rivers, Earl Leverton, Nettie E. Bryan, L. T. Armstrong, Wayne Armstrong, Mary Indiana Armstrong, a/k/a Mary I. Armstrong, a/k/a Mrs. T. H. Armstrong, Fay Kliewer; and Ella B. Hoover and Federal Land Bank of Wichita, Wichita, Kansas, Appellees.
 No. 6772.
 United States Court of Appeals Tenth Circuit.
 July 7, 1962.
 Rehearing Denied September 6, 1962.
 
 Raymond N. Zagone, Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Washington, D. C., B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., and Roger P. Marquis, Dept. of Justice, Washington, D. C., on the brief), for appellant.
 Denver W. Meacham, of Meacham, Meacham & Meacham, Clinton, Okl. (Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, William J. Holloway, Jr., and Paul R. McDaniel, Oklahoma City, Okl., with him on the brief), for appellees.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This is a proceeding by the United States to obtain by condemnation clearance easements[1] over neighboring lands for use as airplane approaches to Clinton-Sherman Air Force Base in Washita County, Oklahoma. The right to acquire the easements is not disputed. The district court referred the question of adequate compensation to a commission. This is an appeal from a judgment approving and confirming the commission's awards of compensation to be paid to the owners of the tracts of land affected by the taking.
 
 
 2
 Rule 71A(h), Fed.R.Civ.P., 28 U.S. C.A., authorizes the district court to appoint a commission of three to determine the issue of compensation to be paid by the United States in land condemnation cases. The commission has the powers of a master as provided for in Rule 53(c), Fed.R.Civ.P., and the proceedings are governed by paragraphs (I) and (II) of subdivision (d) thereof. The report and findings of the commission shall have the effect, and be dealt with by the court in accordance with the practice, set forth in Rule 53(e) (II). United States v. Waymire, 10 Cir., 202 F.2d 550. The court's order of reference did not require findings of fact and conclusions of law, and it limited the commission's duties to determining the amount of damages to be paid to the landowners.
 
 
 3
 Just compensation means the full equivalent in money for the property taken. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. Since the taking of the property by eminent domain is not a voluntary transfer the determination of just compensation is an informed guess or estimate based upon the best available criteria of value. Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765, 7 A.L.R.2d 1281. Usually it is described as the fair market value of the property when taken. United States v. Silver Queen Mining Co., 10 Cir., 285 F.2d 506. The determination, however, cannot be reduced to a rigid and fixed rule or formula. United States v. Commodities Trading Corp., 339 U.S. 121, 70 S.Ct. 547, 94 L.Ed. 707; United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195; United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392. "The guiding principle * * * is reimbursement to the owner for the property interest taken." United States v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed.2d 838.
 
 
 4
 It was stipulated that the highest and best use of the eight tracts of land involved on this appeal was for general agricultural purposes. There was no evidence that the land had any other value except for minerals. The owners of the different tracts testified as to the value of their lands and the amount of damages which the easements caused to them. Appraisers for the United States determined the values, including the mineral values, of the tracts to be substantially less than that fixed by the respective landowners, and their opinions as to damages were comparably smaller. In addition, an appraiser, A. L. Willcox, testified on behalf of the landowners, and, using a formula of his own development, he arrived at an opinion as to the damages to the land by equating the taking of the air space above it to the taking of an undivided portion of the surface.[2] The application of this formula resulted in damages substantially higher than those arrived at by the landowners or the appraisers for the United States.
 
 
 5
 The commission, after viewing the premises, filed a report which cited the order of reference, and contained ultimate findings as to the amount of compensation to be paid to each landowner. The United States objected to the adequacy of this report, but made no request for specific findings. Thereafter an additional and supplemental report, which included findings of fact, was filed.[3] In objecting to this report, the United States alleged that the commission had failed to make specific findings as to the facts upon which the valuation was based, and further that the report wholly failed to show how conflicting evidence was resolved.[4] Relying on United States v. 2,477.79 Acres of Land, 5 Cir., 259 F.2d 23; United States v. Buhler, 5 Cir., 254 F.2d 876; and United States v. Cunningham, 4 Cir., 246 F.2d 330, it contends that the findings are inadequate for a proper review of the proceedings and that the case should be remanded for more adequate findings.
 
 
 6
 The parties were in agreement as to the type of land over which the easements were taken, and its highest and most profitable use. Generally, the witnesses arrived at their estimates of damages to the land by determining the difference between the market value before the taking of the easement and the market value thereafter. This is the normal method of valuing damages for the taking of an easement by the United States. United States v. Virginia Electric & Power Co., supra. The report of the commissioners shows that its conclusions were arrived at in the same manner. There was a sharp conflict in the evidence as to the amount of these damages. The commissioners' awards are well within the range of this conflicting testimony, and it is settled in this circuit that such findings shall be accepted unless clearly erroneous. Rapid Transit Co. v. United States, 10 Cir., 295 F.2d 465; Buena Vista Homes, Inc. v. United States, 10 Cir., 281 F.2d 476; United States v. Waymire, supra.[5]
 
 
 7
 "The primary and basic test as to the adequacy of findings is whether they are sufficiently comprehensive and pertinent to the issues in the case so as to provide a basis for purposes of decision." Shapiro v. Rubens, 7 Cir., 166 F.2d 659, 665. See United States v. Tampa Bay Garden Apartments, Inc., 5 Cir., 294 F.2d 598; United States v. Pendergrast, 4 Cir., 241 F.2d 687; 5 Moore's Fed. Practice Par. 52.06[1], at 2656 (2d Ed. 1951). The extent of exactness which is required in findings depends upon the nature of the matter involved. Kelley v. Everglades Drainage Dist., 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485. The evidence presented to the commission in this case related entirely to the diminution in value of the lands after the easements were taken, and a general finding as to this amount was made.
 
 
 8
 We are satisfied that, considering the record as a whole, including all the evidence, our power to review the awards can be properly exercised, and that more specific findings would not be helpful. The situation might be different if there were numerous elements to be considered in arriving at just compensation, as there were in the cases from the Fourth and Fifth Circuits which the United States relies upon.[6] The issues in this case are not complicated, however, and the findings are entirely adequate to permit us to review them and conclude that they are not clearly erroneous.
 
 
 9
 The United States also asserts error arising out of the failure of the commission to grant its motion to strike the entire testimony of the landowners' expert witness, A. L. Willcox. While other grounds were asserted in its motion the United States now relies on only two of these:
 
 
 10
 "(1) the consideration by Willcox of the managerial skill of individual landowners in appraising fair market value prior to the taking, and
 
 
 11
 "(2) the impropriety of his testimony as to damages which were computed pursuant to a formula."
 
 
 12
 Willcox was employed by an insurance company as district manager in charge of making farm and ranch loans in the southwest part of the United States. He had been engaged in similar employment since about 1926, and his duties included making appraisals and determining values of farm and ranch properties. He testified that he had appraised property in Washita County since 1935, and knew its value. He stated that he was familiar with the particular tracts involved in this proceeding and with the easement which the government took, and he fixed the values of the lands prior to the taking. An examination of the testimony concerning managerial skill reveals that Willcox was considering that managerial skill which had contributed to the future profitability of the property. Such evidence was admissible as a factor in determining the value of the property taken by condemnation. Kimball Laundry Co. v. United States, supra.
 
 
 13
 It may be conceded, arguendo, that the formula utilized by Willcox in appraising the damage to the several tracts resulted in arbitrary damage assessments which were irrelevant in determining fair market value after the taking. Cf. United States v. Commodities Trading Corp., supra; United States v. Toronto, Hamilton & Buffalo Navigation Co., supra; United States v. Cors, supra. It is apparent from its conclusion that the proper measure of damages was the difference between fair market value prior to the taking and fair market value after the taking, that the commission did not consider the formula testimony in arriving at its awards. United States v. Delaware, L. & W. R. R., 3 Cir., 264 F.2d 112, cert. denied 361 U.S. 819, 80 S.Ct. 63, 4 L.Ed.2d 65; United States v. Hirsch, 2 Cir., 206 F.2d 289. The error, if any, was not prejudicial to the United States.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The easements taken were described as:
 "(1) The continuing perpetual right to top, to cut to ground level, to remove, and to prohibit the growth of trees, bushes, shrubs, or any other perennial growth or undergrowth infringing upon, extending into, extending above, or which could in the future infringe upon, extend into, or extend above the Glide Angle Plane and/or Transitional Surface as described in Schedule `Z'.
 "(2) The continuing perpetual right to remove, to raze, to destroy, and to prohibit the future construction of buildings or portions thereof, other structures or portions thereof, land, embankments of earth and other materials infringing upon, extending into, extending above the Glide Angle Plane and/or Transitional Surface as described in Schedule `Z'.
 "(3) The right to ingress to, egress from, and passage on the lands described in Schedule `A' for the purpose of exercising the rights hereby taken for said public uses. Reserving, however, to the landowners, their heirs, executors, administrators, successors, and assigns, all rights, titles, interests and privileges as may be exercised and enjoyed without interference with or abridgment of the rights hereby taken for said public uses."
 Schedule "Z" described runway approach zones extending laterally and longitudinally from the existing runways. The Glide Angle Plane was defined as:
 "The glide angle plane is a trapezoidal plane extending over the runway approach zone starting at an elevation equivalent to the center line elevation at the end of the runway and sloping upward from the narrower end at a rate of 1 foot vertically for each 50 feet horizontally."
 
 
 [2]
 The formula used by Willcox assumed that no damage to the surface would result from the taking of air space above an altitude of 200 feet. It also assumed an absolute taking if the air space taken reached ground level. Under the formula damages were computed as ½ of 1% of the value of the surface for each foot of the average air space taken below 200 feet. This average was computed as 200 minus one-half of the sum of the altitudes of the Glide Angle Plane as it passed over the opposite boundaries of each tract. He valued the minerals separately, and considered them as taken completely if the average altitude of the Glide Angle Plane was lower than the height of an average oil drilling rig
 
 
 [3]
 This subsequent report made findings as to the height of the clearance easement over each tract, together with a finding that the highest and best use of the land was for agricultural purposes, and concluded that: "The amount of just compensation for each land owner involved is the difference between the fair cash market value of the estate of the defendants at the time of the taking and the fair cash market value of the estate of the defendants immediately after said taking, being the demunition (sic) of said fair cash market value caused solely and directly by the taking; * * *."
 
 
 [4]
 A portion of the objections reads:
 "2. The Reports wholly fail to make specific findings as to the facts on which the Commission based its valuation, and fail to show how they applied applicable principles of law to the facts in reaching their ultimate conclusions.
 "3. The Reports wholly fail to show that all incompetent and inadmissible testimony was disregarded.
 "4. The Reports wholly fail to show how controverted testimony was resolved, if it were, in arriving at the valuations, and are therefore deficient and inadequate.
 "5. The Reports taken as a whole amount to no more than a general verdict of a jury, since no specific findings of any controverted issues were made, the only specific findings being as to those matters which were stipulated to by the parties to this action. Therefore the Reports are wholly inadequate to furnish an adequate basis for review by the Trial Judge or an Appellate Court."
 
 
 [5]
 In United States v. Waymire, 10 Cir., 202 F.2d 550, 553-554, the court said:
 "Upon review, it was the duty of the court to accept the awards of the commission unless they were clearly erroneous in whole or in part because based upon a substantial error in the proceedings, because based upon a misapplication of the controlling law, because unsupported by substantial evidence, or because contrary to the clear weight of all the evidence. And while it was incumbent upon the court to proceed with due regard for these general principles, if on the whole record the court was clearly convinced that in fixing just compensation for the property taken the commission acted arbitrarily and without proper regard for the evidence, or that the awards were unsupported by any substantial evidence, or that they were against the clear weight of all the evidence, it was the duty of the court to modify them, reject them in whole or in part, receive further evidence, or recommit the matter to the commission with instructions. * * *"
 
 
 [6]
 In United States v. Cunningham, 4 Cir., 246 F.2d 330, the land taken was a peninsula approximately 1 mile wide and 4 miles long, containing over 1850 acres. The property was largely undeveloped but was near a developed beach area and was suitable for development as a beach area for residential and commercial uses. There was testimony as to the value of the ocean front lots. It had value for sport fishing and hunting purposes. The value had been enhanced by the construction of a public highway across the peninsula and the creation of an artificial lake. Evidence of mineral value was offered
 The land involved in United States v. 2,477.79 Acres of Land, 5 Cir., 259 F.2d 23, was taken in connection with the establishment of a dam and reservoir in the Brazos River Basin in Texas and the expansion of Fort Hood. Prior to the taking, the land was useful for farming and ranching. The building of the reservoir created a water front. One of the principal issues was the added value to the land caused by the creation of the lake. There was also a dispute as to the highest and best use of some of the tract.
 In the Buhler case the lands taken involved extensive improvements, including a residence, swimming pools, an airfield with concrete runways, utility systems and 3500 feet of railroad track. A portion was used as an industrial warehouse area. There was also an area subdivided by paved roadways which was ideally suited for residential development. See United States v. 1146.32 Acres of Land, S.D.Tex., 20 F.R.D. 21. "The report contains no discussion specifically addressed to that parcel or to the various highest and best uses — airfield, warehouse, subdivision, farming — claimed for it." United States v. Buhler, 5 Cir., 254 F.2d 876, 882.